**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMMA AFRIYIE and ROY CAMPBELL, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-09433-VSB |
| Plaintiffs, | Hon. Vernon S. Broderick |
| v. | |
| NBCUNIVERSAL MEDIA, LLC and PEACOCK TV, LLC, | |
| Defendants. | |

**<u>DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION    ..................................................................................................1

II.   BACKGROUND    .................................................................................................2

    A.    The NBCU Apps..........................................................................................2

    B.    NBCU Apps' Use of SDKs...........................................................................4

        1.    The Adobe Experience SDK............................................................4

            a.    *Data transmitted to Adobe* ................................................4

            b.    *Adobe's use of Adobe IDs in connection with (i) date received from the NBCU Apps and (ii) data stored by Adobe*....................................................................5

        2.    The mParticle SDK ..........................................................................6

    C.    NBCU Apps' Terms and Privacy Policy ....................................................7

    D.    The Named Plaintiffs' Experiences ..........................................................8

III.  LEGAL STANDARD.............................................................................................9

IV.   ARGUMENT    ....................................................................................................10

    A.    Plaintiffs' Video Privacy Claims Fail.....................................................10

        1.    The Complaint does not allege the knowing disclosure of any "personally identifiable information." ................................................11

            a.    *"Unknown user information," like device identifiers, is not personally identifiable information*..................................................................11

            b.    *Even if device identifiers could identify individuals, Plaintiffs do not plead any identification here*.............................14

            c.    *Plaintiffs do not plead that Defendants had any way of knowing whether the Adobe SDK would transmit identifying information about the Plaintiffs.* ...................16

        2.    Plaintiffs do not allege a "consumer" relationship with respect to the CNBC, NBC News, or NBC Sports Apps...........................17

i

3.      Defendants do not "rent" or "sell" prerecorded video content and, thus, are not subject to the Video Consumer Protection Act .................................................................20

B.      Plaintiffs' GBL § 349 Claim Fails ........................................................21

1.      Plaintiffs identify no misrepresentations ...................................22

2.      Plaintiffs do not allege NBCU's Privacy Policy—which describes all the conduct they complain of —was unavailable to them......................................................................23

C.      Plaintiffs' Unjust Enrichment Claim Fails............................................24

V.      CONCLUSION.......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................9-10

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015)..............................................................19

*Baptiste v. Apple Inc.*,
2023 WL 2480745 (N.D. Cal. Mar. 13, 2023).....................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................9

*Bellin v. Zucker*,
6 F.4th 463 (2d Cir. 2021) .........................................................................8

*Burgess v. United States*,
553 U.S. 124 (2008)................................................................................11

*Bytemark, Inc. v. Xerox Corp.*,
342 F. Supp. 3d 496 (S.D.N.Y. 2018)..............................................................25

*Carter v. Scripps Networks, LLC*,
2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023)..............................................17-18, 20

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010)..............................................................22

*In re Columbia Tuition Refund Action*,
523 F. Supp. 3d 414 (S.D.N.Y. 2021)..............................................................24

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ..............................................................................24

*Dimond v. Darden Rests., Inc.*,
2014 WL 3377105 (S.D.N.Y. July 9, 2014) ........................................................23

*DiMuro v. Clinique Lab'ys, LLC*,
572 F. App'x 27 (2d Cir. 2014).....................................................................10

*Dixon v. Ford Motor Co.*,
2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ......................................................23

*Duran v. Henkel of Am., Inc.*,
450 F. Supp. 3d 337 (S.D.N.Y. 2020) .....................................................................22

*Eichenberger v. ESPN, Inc.*,
2015 WL 7252985 (W.D. Wash. May 7, 2015) ........................................................13

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ...................................................................1, 12, 13

*Ellis v. Cartoon Network, Inc.*,
2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ..........................................13, 18, 20

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ..................................................................................22

*Freedom Mortg. Corp. v. Tschernia*,
2021 WL 1163807 (S.D.N.Y. Mar. 26, 2021) ........................................................24

*Gardener v. MeTV*,
2023 WL 4365901 (N.D. Ill. July 6, 2023) ............................................................25

*Glover v. Bob's Disc. Furniture, LLC*,
621 F. Supp. 3d 442 (S.D.N.Y. 2022) ...................................................................22

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ......................................................................24

*Golden v. NBCUniversal Media, LLC*,
2023 WL 5434378 (S.D.N.Y. Aug. 23, 2023) ............................................ *passim*

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019) ....................................................................................10

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..................................................................16

*In re Hulu Privacy Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ..................................................12, 16

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ...................................................................1, 12, 13

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d 940 (2012) ...........................................................................................21

*Kyszenia v. Ricoh USA, Inc.*,
583 F. Supp. 3d 350 (E.D.N.Y. 2022) ..............................................................23, 24

*Lamb v. Forbes Media LLC*,
   2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023)................................................................19, 20

*Locklear v. Dow Jones & Co.*,
   101 F. Supp. 3d 1312 (N.D. Ga. 2015)...................................................................................13

*Lugones v. Pete and Gerry's Organic, LLC*,
   440 F. Supp. 3d 226 (S.D.N.Y. 2020)....................................................................................23

*Martin v. Meredith Corp.*,
   657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................................................................................12

*Mollett v. Netflix, Inc.*,
   2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) .......................................................................16

*Morales v. Apple, Inc.*,
   2023 WL 5579929 (S.D.N.Y. Aug. 29, 2023)...........................................................21, 22, 23

*Mount v. PulsePoint, Inc.*,
   684 F. App'x 32 (2d Cir. 2017), *as amended* (May 3, 2017)............................................ 21-22

*Ohanian v. Apple Inc.*,
   2022 WL 826415 (S.D.N.Y. Mar. 18, 2022) ............................................................................8

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)....................................................................................................21

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003).....................................................................................23

*Perry v. Cable News Network, Inc.*,
   854 F.3d 1336 (11th Cir. 2017) .........................................................................................18, 19

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015)........................................................................ 12, 13-14

*Salazar v. Nat'l Basketball Ass'n*,
   2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) ..........................................................................18

*Samuels v. Air Transp. Loc. 504*,
   992 F.2d 12 (2d Cir. 1993).......................................................................................................10

*In re Sling Media Slingbox Advert. Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016).....................................................................................22

*Soto v. Disney Severance Pay Plan*,
   26 F.4th 114 (2d Cir. 2022) .....................................................................................................10

*United States v. Martin*,
    974 F.3d 124 (2d Cir. 2020)............................................................................11

*United States v. Tabb*,
    949 F.3d 81 (2d Cir. 2020)..............................................................................14

*Vivar v. Apple Inc.*,
    2022 WL 4227309 (S.D.N.Y. Sept. 12, 2022)...................................................22

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022).......................................................12-14, 16

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016)........................................................................15, 16

**Statutes**

18 U.S.C. § 2710 ................................................................... 11-12, 16, 17, 20

N.Y. Deceptive Trade Practices Act ("GBL § 349")......................................2

N.Y. Gen. Bus. Law § 672 ...........................................................11, 12, 17, 21

N.Y. Gen. Bus. Law § 673 ...............................................................16, 17, 21

N.Y. Gen. Bus. Law § 674 ...................................................................21

**Rules**

Fed. R. Civ. P. 8 ..............................................................................9, 10

Fed. R. Civ. P. 12(b)(6)....................................................................9, 10

## I.    INTRODUCTION

Plaintiffs' Complaint is lengthy, replete with technical jargon, and full of allegations about NBCUniversal Medial, LLC ("NBCU") apps that Plaintiffs do not allege they ever used. But despite all the bluster, what the Complaint does not do is plead an actionable Video Privacy Protection Act, 18 U.S.C § 2710 (the "VPPA") claim (or any other) against NBCU or Peacock TV, LLC ("Peacock"). To the contrary, the Complaint turns on theories of VPPA liability that have been rejected for years. The claims asserted here must also fail.

Over the past year or so, plaintiffs have filed *hundreds* of class action lawsuits alleging that businesses' use of certain analytical tools violates the VPPA. Nearly all of these cases involve the same identifier—the now infamous "Facebook ID"—which courts have generally found at the pleading stage may allow someone to personally identify an individual. That is crucial because almost every court agrees that the VPPA only applies to information that "readily permits *an ordinary person* to identify a particular individual as having watched certain videos." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (emphasis in original and cleaned up) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

The case presented here does not embrace that theory. Instead, Plaintiffs Amma Afriyie and Roy Campbell posit that disclosure of information *about their devices* implicates the VPPA (and New York's state law analogue, the Video Consumer Privacy Act, or "VCPA"), because certain third parties might be able to figure out who those devices belong to. But *that* theory of liability has been largely—and rightfully—rejected for years (including by S.D.N.Y. district courts). The various flavors of liability proposed here present no reason to turn back the clock.

First, Plaintiffs' theories of liability under the VPPA and VCPA fail for multiple reasons. At the outset, their claims are exceedingly narrow: Plaintiffs *only* allege they used the Peacock

TV and CNBC Apps on their iPhones, which resulted in disclosures to Adobe. (Plaintiffs don't allege that they used the NBC News or NBC Sports Apps, they had Android devices, or their information was disclosed to mParticle.) Those alleged Adobe disclosures, in turn, do not and cannot state a claim: the information disclosed does not constitute statutory "personally identifiable information" ("PII"); Plaintiff Afriyie's free use of the CNBC App does not implicate either statute; and Defendants are not even subject to the VCPA at all.

Second, Plaintiffs' back-up theory under Section 349 of the New York Deceptive Trade Practices Act ("GBL § 349") fails to allege an actionable misrepresentation or omission. The misrepresentation claim fails because Plaintiffs do not identify any allegedly false or misleading representations they viewed or relied on. And the omission claim fails because all the conduct complained of here was not concealed: to the contrary, it was disclosed in the same publicly available documents cited in the Complaint.

Third, Plaintiffs' unjust enrichment claim fails because it does not allege any purportedly wrongful conduct not already covered by Plaintiffs' statutory causes of action. As many other courts have found with analogous claims presented alongside of VPPA counts, it should be dismissed as duplicative (and also for the same reasons that Plaintiffs' other claims fail).

The Complaint as a whole should therefore be dismissed.

## II.    BACKGROUND

### A.    The NBCU Apps

NBCU owns and operates a number of mobile applications that incorporate streaming video, including the Peacock TV App, the CNBC News App, the NBC News App, and the NBC Sports App (the "NBCU Apps"). Compl. ¶ 2. As described in the Complaint, each of these apps allow users to view prerecorded video content, ranging from TV shows and movies (in the case

of the Peacock TV App) to clips concerning news, politics, and sports (for the rest). *Id.* The Peacock TV App *requires* that users register to access video content. *Id.* ¶ 29. The others do not.

**Peacock TV App.** The Peacock TV App is an entertainment-based video streaming app that offers "over 10,000 hours of prerecorded TV shows, movies, and more." *Id.* ¶ 27. While the Peacock App can be freely downloaded by iOS or Android users, only registered (and paying) subscribers can access its video content. *Id.* ¶¶ 29-30.

**CNBC App.** The CNBC App corresponds to the popular CNBC cable news channel and website. The app allows users "to view pre-recorded video content such as business news, tech news, financial news, and culture." *Id.* ¶ 31. Anyone can download the CNBC App and use it to watch pre-recorded video content; there is no requirement that a CNBC App user create or pay for an account to watch videos. *Id.* ¶ 33 ("To subscribe to the CNBC App, users must download the app[.]"). The CNBC App offers a "premium video-viewing service," which requires that subscribers pay an annual or monthly subscription fee, along with an email address. *Id.* ¶¶ 33, 34.[1] Neither Plaintiff alleges they subscribed to that premium service.

**NBC News.** The NBC News App provides access to news articles and media reported by a variety of news-related sources. *Id.* ¶ 36. Anyone can use the NBC News App simply by downloading it. *Id.* ¶ 38. Neither Plaintiff alleges they used the NBC News App.

**NBC Sports.** The NBC Sports App provides access to sport-related media, such as highlights from sporting events. *Id.* ¶ 40. Anyone can download the NBC Sports App and use it to watch pre-recorded video content; no payment or account creation is required. *Id.* ¶ 42. Users of the NBC Sports App have the option of either using an NBCUniversal profile or linking their

---

[1]     The Complaint erroneously suggests, without pleading any supporting facts, that CNBC App users "must provide . . . their email address." Compl. ¶ 33. This is false:  anyone can download the CNBC App and view its free video content without providing an email address.

television cable provider to access additional video content only available to such users. *Id.* Neither Plaintiff alleges they used the NBC Sports App.

**B.    NBCU Apps' Use of SDKs**

Plaintiffs allege that, like most apps, the NBCU Apps include software components called "SDKs." Compl. ¶ 44. Plaintiffs allege these SDKs allow Defendants to "receive[] analytic insights about subscribers, including subscribers' video viewing history," and "improve their services, tailor their product offerings to subscribers, and market and sell other products." *Id.* ¶ 46. Plaintiffs allege that the SDKs also facilitate the transmission of "subscribers' data to third parties." *Id.* ¶ 48. While the Complaint obliquely references "other SDKs" used in the NBC Apps, it only alleges facts about two: "the Adobe Experience SDK" and the "mParticle SDK."

**1.    The Adobe Experience SDK.**

Plaintiffs allege that by using the Adobe Experience SDK, (i) each of the NBCU Apps transmitted—or could have transmitted—data to third party Adobe and (ii) Adobe can match some of the transmitted data to "unique customer profiles for individuals" that it maintains. The allegations underlying those processes are described below.

*a.    Data transmitted to Adobe*

Plaintiffs allege that two categories of data are transmitted via the Adobe Experience SDK to third party Adobe.

**Video viewing history.** First, Plaintiffs allege the Adobe Experience SDK transmits information about the videos that users watch to Adobe. Compl. ¶¶ 49-50. Plaintiffs allege that the transmitted video viewing information includes "Video Titles" or "Video IDs," which Plaintiffs describe as "identifiers that allow someone to uniquely identify a specific video, i.e., a numeric identifier, a full URL, or other identifier." *Id.* ¶¶ 50, 5 n.2. Plaintiffs don't allege

whether *Adobe* can link Video IDs to specific videos—only that "someone" can do it in some undescribed way.

**Device-generated data.** Second, Plaintiffs allege that the Adobe Experience SDK transmits two types of device-related data to Adobe: IDFAs and AAIDs. Compl. ¶ 50. The Complaint describes IDFAs and AAIDs as "advertising identifiers" that Apple and Google assign to particular iOS and Android devices, respectively. *Id.* ¶¶ 5 n.4, 5 n.6. Plaintiffs do not claim that IDFAs or AAIDs identify individuals; rather, they are associated with *devices* (e.g., IDFAs are associated with specific iPhones and iPads, and AAIDs are associated with specific Google Pixel phones or Amazon Fire Tablets). For example, if a family of four shares the same iPad and uses the same Peacock TV App, *one* IDFA will be transmitted to Adobe by the Adobe SDK regardless of who is using it. For that reason, the Complaint acknowledges that "device IDs" are not "personally identifiable data" but, instead, are "unknown user data." *Id.* ¶ 55.

According to Plaintiffs, individual device settings determine whether any device transmits IDFAs or AAIDs. For iOS devices, the Complaint explains that users must "opt-in" to allowing IDFAs to be shared with third parties like Adobe, an option selected by only 21% of all iOS users. *Id.* ¶ 63. Plaintiffs similarly allege that Android device users are given the option of "turn[ing] off collection of advertising identifiers on their mobile devices," but do not give any statistics as to how may Android users chose to permit AAID tracking. *Id.* ¶ 62.

> b.    *Adobe's use of Adobe IDs in connection with (i) data received from the NBCU Apps and (ii) data stored by Adobe*

Plaintiffs allege that Adobe uses a third category of data—an Adobe-created Adobe ID or Adobe Experience Cloud ID ("ECID")—to associate device data received from third parties with "profiles [Adobe maintains] about individual consumers." Compl. ¶ 52, 61. Plaintiffs allege that when an individual uses one of the NBCU Apps, Adobe will "assign" an Adobe ID to a user. *Id.*

¶ 61. According to Plaintiffs, if the individual transmits a device ID to Adobe (if they choose to allow ad tracking, as explained above), Adobe can "link" that device data with an assigned Adobe ID. *Id.* ¶ 51. Plaintiffs further allege if that linking occurs and the same device ID is again transmitted to Adobe in connection with "video viewing history," Adobe can "attribute" that video viewing history "to an individualized profile in its databases." *Id.* ¶ 67.[2]

Critically, the Complaint alleges that only *Adobe* can "link" device IDs to its own internal profiles, not anyone else. *Id.* ¶ 51. The Complaint recognizes that without such linking, any transmitted IDFA and AAID data remains "unknown user data." *Id.* ¶ 55.

### 2.    The mParticle SDK

Plaintiffs also allege that by using the mParticle SDK, the CNBC App (but not the Peacock TV App), as well as NBC News and NBC Sports Apps they do not claim they ever used, transmit certain information to third party mParticle. Like Adobe, the Complaint alleges that the mParticle SDK transmits "video viewing history" to mParticle. *Id.* ¶ 68. But unlike Adobe, the Complaint alleges that the other information transmitted by the mParticle SDK differs depending on the App:

(i)    for the CNBC App, Plaintiffs say that "New Relic IDs" and Android IDs are transmitted for Android devices, but do not allege that any data is transmitted for iOS devices, ¶ 71.

(ii)    for the NBC News App, Plaintiffs say Adobe IDs and AAIDs are transmitted for Android devices, and IDFVs and "user device names"[3] are

---

[2]    Plaintiffs say that the Adobe ID lets Adobe "identify app users even if they have turned off collection of advertising identifiers on their mobile devices." Compl. ¶ 62. Even if that is true in some circumstances, it is not clear what relevance it has to the claims and facts at issue in this case, given that Plaintiffs only allege that the Adobe SDK transmits device IDs (i.e., IDFAs and AAIDs) and *assigns* Adobe IDs based on that data. Compl. ¶¶ 61, 65. If a user does not allow their IDFA or AAID to be transmitted, Plaintiffs allege no facts that would allow Adobe to assign or otherwise associate an Adobe ID with an existing Adobe consumer profile.

[3]    The Complaint explains that an "IDFV is an identifier assigned by Apple to all apps on a single user's iOS device from the same vendor," ¶ 5 n.5, and that a "user's device name" can be anything a user chooses, ¶ 38 n.12.

transmitted for iOS users, ¶ 70;

(iii)    for the NBC Sports App, Plaintiffs say "AAID, Adobe ID, user or account identifiers, and email [addresses]" for Android devices are transmitted, ¶ 69.

The Complaint alleges that mParticle can use information in its possession to associate this collected data with its own internal "user profiles." As Plaintiffs describe it, the process is similar to how the Adobe ID works: as mParticle receives information from apps (e.g., AAIDs), it determines whether that information matches any of its internal "user profiles." *Id.* ¶ 77. According to Plaintiffs, if there is a match, "mParticle returns a matching user profile, but if there is no match, mParticle assigns a new "mParticle ID based on the user's device ID." *Id.* As with Adobe, Plaintiffs allege the only way that mParticle even can identify users is by using device-based data based on the "user profiles" it—and it alone—has access to.

**C.    NBCU Apps' Terms and Privacy Policy.**

The Complaint acknowledges that use of the NBCU Apps is governed by either NBCU's or Peacock's Terms of Use, and the NBCU Privacy Policy. For example, it alleges that New York law applies to Plaintiffs' claims because "NBCUniversal's Terms of Service" and "Peacock's Terms of Service" call for it. *Id.* ¶¶ 115, 116. Additionally, Plaintiffs note that these same "terms and conditions each include a forum selection clause requiring actions to be brought exclusively in the federal or state courts located in New York, New York." *Id.* ¶ 25.

Plaintiffs also expressly reference the "NBCUniversal Privacy Policy" (the "Privacy Policy") as it existed on December 16, 2022. *Id.* ¶ 25 n.7. The NBCU Privacy Policy was expressly incorporated into both the NBCU Terms and Peacock Terms at that time. *See* Exhibits

A at 1 and B and 1, submitted herewith.[4]

The NBCU Privacy Policy explains the various categories of information that the NBCU Apps collect and disclose. For example, it explains that Defendants "collect, use, and share information from or about you when you use our websites [and] downloadable applications[.]" Ex C at 1. It goes on to explain that the NBCU Apps collect, among other data, "device information and identifiers," including "advertising and app identifiers," along with the "content you view and [its] duration." *Id.* at 2, 3. It also notes that Defendants collect information from third parties, again including "device . . . or other unique identifiers." *Id.* at 4. And then it explains that this same information, including "device information and identifiers," is shared with "Advertisers, Advertising Networks, and Other Third Parties." *Id.* at 6. According to the Complaint, Defendants do this "to improve their services, tailor their product offerings to subscribers, and market and sell other products," Compl. ¶ 46, which the Privacy Policy also explicitly discusses and explains, Ex. C at 5.

### D.    The Named Plaintiffs' Experiences.

Plaintiff Afriyie claims she downloaded the Peacock TV App in 2021 and pays for an annual subscription. *Id.* She also claims she downloaded the CNBC App in 2021, but does not allege that she paid for any CNBC-related subscription. *Id.* ¶ 14. She says she used the Peacock

---

[4]    Copies of the NBCU Terms of Service, the Peacock Terms of Service, and the NBCU Privacy Policies as they existed on December 16, 2022 are attached as Exhibits A, B, and C to the Landis Declaration, respectively. As described in the Landis Declaration, the Exhibits were taken using the Internet Archive's Wayback Machine. Because they are explicitly referenced, relied on, and even cited to in the Complaint, they are incorporated by reference and can be considered with this Motion. *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021); *see also Ohanian v. Apple Inc.,* No. 20 CIV. 5162 (LGS), 2022 WL 826415, at *2 n.1 (S.D.N.Y. Mar. 18, 2022). Because the exhibits were taken from the Internet Archive, they are also subject to judicial notice and can be considered for that reason as well. *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 (PAE), 2023 WL 5434378, at *10 n.14 (S.D.N.Y. Aug. 23, 2023) (taking judicial notice of similarly-archived webpages).

TV and CNBC Apps to view pre-recorded video content. *Id.* ¶ 15. Plaintiff Afriyie has an iOS mobile device, *id.* ¶¶ 13, 15, but does not allege that she opted-in to ad tracking such that her device transmitted its IDFA when she used the Peacock TV App. She also does not allege whether either Adobe or mParticle had an existent user profile for her, or whether ones were "assigned to" or "created for" her when she started using the Peacock or CNBC Apps. Plaintiff Afriyie does not allege she used either the NBC News or NBC Sports Apps.

Plaintiff Campbell claims he downloaded the Peacock TV App in 2022 and pays for a monthly subscription. *Id.* ¶ 18. He is also an iOS user. *Id.* Plaintiff Campbell does not allege that he opted-in to ad tracking. He also does not allege whether Adobe or mParticle had an existent user profile for him, or whether ones were "assigned to" or "created for" him when he started using the Peacock TV App. Plaintiff Campbell does not allege that he used the CNBC, NBC News, or NBC Sports Apps.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* The rule that a court accept as true allegations in a complaint is "inapplicable to legal conclusions," *id.*, and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief" is "a context

specific task" that requires a court "to draw on its judicial experience and common sense." *Id.*

"In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the

pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and

matters of which judicial notice may be taken.'" *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir.

2019) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993)). A court "must

dismiss a claim if a plaintiff pleads himself out of court by alleging facts which show that he has

no claim." *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 120 (2d Cir. 2022) (cleaned up).

## IV.    ARGUMENT

The four counts asserted in the Complaint all turn on the Peacock TV App's (for both

Plaintiffs) and the CNBC App's (for Plaintiff Alfriyie only) alleged transmission of device-

related data to third party Adobe—allegations that, for the reasons described below, do not and

cannot state any claim for relief. While the Complaint devotes significant space to discussing

NBC Apps that Plaintiffs *did not use* (the NBC News and NBC Sports App, or the CNBC App

for Plaintiff Campbell) or third-party disclosures that *did not affect* the Plaintiffs (i.e., alleged

data transmissions to third party mParticle from non-iOS devices[5]), none of those allegations

address the Plaintiffs and, thus, are not at issue here. *See DiMuro v. Clinique Lab'ys, LLC*, 572 F.

App'x 27, 29 (2d Cir. 2014) (affirming dismissal of claims based on products the plaintiffs did

not purchase). For the reasons discussed below, the allegations pertaining to the Plaintiffs named

in the Complaint do not—and cannot—state any claim for relief.

### A.    Plaintiffs' Video Privacy Claims Fail

The gravamen of Plaintiffs' dispute centers on Defendants' alleged violations of the

---

[5]      As discussed above, while Plaintiff Afriyie alleges that she used the CNBC App, the Complaint
only alleges it discloses device-related information for *Android* users—not iOS users like Afriyie. Compl.
¶ 71. The Complaint does not allege that the Peacock TV App transmitted any data to mParticle.

VPPA and VCPA. But the facts alleged in the Complaint cannot state a claim under those statutes for numerous reasons, including that (i) Plaintiffs do not allege a disclosure of statutory PII; (ii) Plaintiffs do not establish that they are VPPA or VCPA "consumers" with respect to the non-Peacock TV Apps; and (iii) Plaintiffs' do not show that Defendants are subject to the VCPA.

### 1. The Complaint does not allege the knowing disclosure of any "personally identifiable information."

Plaintiffs' claims fail because they do not allege the disclosure of statutory PII—under *either* the majority (used by the Third and Ninth Circuits, and two S.D.N.Y district courts) or minority (used only in the First Circuit) definition of that term. And even if PII were transmitted, the facts pleaded here show that Defendants could not possibly have done so knowingly.

#### a. *"Unknown user information," like device identifiers, is not personally identifiable information.*

Device identifiers are not PII under either the VPPA or the VCPA. The VPPA and VCPA both regulate the disclosure of PII, defined as "information which *identifies a person* as having requested or obtained specific video materials or services[.]" 18 U.S.C. § 2710 (a)(3) (emphasis added); N.Y. Gen. Bus. Law § 672(3). The scope of the two statutes differs slightly. Under the VCPA, PII is limited to information that—by itself—identifies a person as having requested or obtained certain video materials. N.Y. Gen. Bus. Law § 672(3) ("The term 'personally identifiable information' *means* any information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider or video tape seller.") (emphasis added). Thus, if information does not itself identify a person, it is not covered by the VCPA. *United States v. Martin*, 974 F.3d 124, 138 (2d Cir. 2020) (citing *Burgess v. United States*, 553 U.S. 124, 130 (2008)) ("As a rule, a definition which declares what a term means excludes any meaning that is not stated."). The VPPA is slightly broader in that it defines PII as "*includ[ing]* information which identifies a person," 18 U.S.C. § 2710(a)(3), which covers

"more information than that which, by itself, identifies an individual as having watched certain videos." *Eichenberger*, 876 F.3d at 984. But even under the VPPA, the information "must, at the very least, identify a *particular* person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (emphasis in original) (citing *In re Hulu Privacy Litig.,* No. C 11-03764-LB, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014)).[6]

Here, the Complaint fails to allege the disclosure of PII under either statute because none of the disclosed information identifies a *person*. Initially, there is no question that the device-related information allegedly disclosed by the Peacock and CNBC Apps (the IDFAs of Plaintiffs' iOS devices) does not—by itself—identify either Plaintiff. Rather, as the Complaint acknowledges, it is "unknown user data" that identifies *devices* and must be combined with other data before it can personally identify any individual. Compl. ¶¶ 7, 55. Because Plaintiffs do not allege the disclosure of any information that "identifies a person," they cannot state a claim under the VPCA. N.Y. Gen. Bus. Law § 672(3).

Nor do Plaintiffs allege the disclosure of PII under the VPPA. As Judge Rakoff recently explained, a "majority of courts"—including the Third and Ninth Circuits, along with two courts from this District—have interpreted the VPPA's definition of PII to "only refer[] to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (quoting *In*

---

[6]    In addition to identifying a person, PII must show "that a person has requested or obtained specific video materials or services." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023) (cleaned up). Plaintiffs do not allege enough to satisfy that element, given that they only allege the disclosure of *either* "Video Titles" *or* "Video IDs"—which may only include a "numeric identifier" (which Plaintiffs do not allege an "ordinary person" could decipher) or "a full URL." Compl. ¶ 5 n.2. *See Martin*, 657 F. Supp. 3d at 284-85 (alleged disclosures of URLs was not an actionable disclosure of PII).

*re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)); *see also Eichenberger*, 876 F.3d at 985 (adopting *In re Nickelodeon*'s definition). *Robinson* is instructive. In that case, the plaintiff alleged that (i) his viewing history and a device ID (the serial number of his Roku device) was transmitted to Adobe, and—exactly as Plaintiffs allege here—(ii) Adobe could combine this data with its own information to personally identify the plaintiff. *Robinson*, 152 F. Supp. 3d at 180. The *Robinson* court rejected the theory, correctly reasoning that the disclosed information "must itself do the identifying that is relevant for purposes of the VPPA (literally, 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Id.* at 182.

Other courts have taken the exact same approach with respect to the same—or similar— device-related identifiers. *See, e.g.*, *Ellis v. Cartoon Network, Inc.*, No. 1:14–CV–484–TWT, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015) (PII not disclosed where the third party to whom an AAID and viewing history were provided had to "collect information from other sources" to identify the plaintiff); *Locklear v. Dow Jones & Co.*, 101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d 1251 (11th Cir. 2015) ("[A] Roku serial number, without more, is not akin to identifying a particular person, and therefore, is not PII.") (quotations omitted); *Eichenberger v. ESPN, Inc.*, C14–463, 2015 WL 7252985, at *6 (W.D. Wash. May 7, 2015) (allegation that Adobe "used information gathered from other sources to link plaintiff's Roku device serial number and the record of what videos were watched to plaintiff's identity" failed to state a claim for disclosure of PII under the VPPA), *aff'd*, 876 F.3d 979 (9th Cir. 2017).

Notably, the courts in both *Wilson* and *Robinson* rejected the minority interpretative approach that "whether any particular set of information constitutes PII depends on the

capabilities of the party or parties to which it is disclosed – that is, the scope of PII is recipient-dependent." *Wilson*, 598 F. Supp. 3d at 91. As Judge Rakoff explained, this minority approach cannot be squared with the rest of the VPPA. For example, the statute regulates both the disclosure *and* retention of PII, and "[i]t would make little sense for the scope of PII to be recipient-dependent where the conduct at issue does not involve disclosure to a third-party." *Id.* at 91-92 (quoting *United States v. Tabb*, 949 F.3d 81, 88 (2d Cir. 2020) (noting that "identical words and phrases within the same statute should normally be given the same meaning")).

Here (even assuming that Plaintiffs opted into ad tracking, which they have not alleged, *see* Compl. ¶ 63), Plaintiffs at best allege that the Peacock App sent their iOS devices' IDFAs—i.e., "unknown user data," *id.* ¶ 55—to Adobe. But they do not allege that information is itself identifying, or could be used by an "ordinary person" or, indeed, anyone other than Adobe to identify Plaintiffs. Thus, they do not allege a disclosure of PII under the majority interpretive approach endorsed in both *Robinson* and *Wilson*.

> **b.**    *Even if device identifiers could identify individuals, Plaintiffs do not plead any identification here.*

Plaintiffs do not even allege a disclosure of PII under the minority approach used by a handful of courts in other Circuits. Judge Rakoff addressed an analogous issue in *Wilson*. In that case, the plaintiff alleged that the defendant's app disclosed her "unique user identification number" to third parties, who could then "pair" that number with "information from [her] Triller profile page" to personally identify her. *Wilson*, 598 F. Supp. at 92. Lacking, however, were allegations "as to what information was actually included on Wilson's profile nor how that information could be used by a third party to identify Wilson." *Id.* In other words, while the plaintiff alleged that a third party might hypothetically be able to identify her, she did not allege facts showing that disclosure happened or was even possible.

The Complaint suffers from similar flaws. Plaintiffs only allege that when the Peacock TV and CNBC Apps are used, the Apps *may* disclose information that *may* be linked back to the App user. For the Peacock TV App, *if* an iOS user affirmatively opts into ad tracking (which is, again, an option only chosen by 21% of all users), then a IDFA is allegedly disclosed to Adobe. And *if* such a user has an existent Adobe ID (i.e., rather than having one newly assigned to them), then Adobe can potentially match the disclosed IDFA to that user's Adobe ID. For the CNBC App, the Complaint only alleges that information about *Android* users is disclosed.

Thus, even accepting Plaintiffs allegations as true and when using the minority (and largely rejected) interpretative approach for PII, it is *impossible* to determine whether *Plaintiffs'* use of the Peacock TV and CNBC Apps resulted in any disclosures at all—much less "identifying" ones. Here, both Plaintiffs are iOS users but do not allege they opted into ad tracking. According to the Complaint, then, there is only a one-in-five chance that the Peacock TV App disclosed their IDFAs to Adobe. Things are worse for the CNBC App: Plaintiff Afriyie is the only Plaintiff that alleges she used that app, but she is an iOS user, and the Complaint only alleges that the CNBC App made disclosures about *Android* users.[7] Moreover, even if a disclosure of IDFAs were alleged, Plaintiffs do not allege Adobe was able to link their IDFAs to existing Adobe profiles that identified them by name, or even that they had an existing Adobe profile as opposed to being assigned a brand new Adobe ID corresponding to their *device*-identifying IDFA. *Contra Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016) (plaintiffs alleged that Adobe maintained an "individualized profile" about him). In sum, "the complaint lacks any allegation that would allow the Court to infer a 'firm and

---

[7]    Even if Afriyie was an Android user, the only information the CNBC App allegedly disclosed is a "New Relic ID," but the Complaint does not say anything about what that ID is (e.g., whether it identified a device, a person, or something else entirely).

readily foreseeable' connection between the information disclosed and [either Plaintiffs']

identity, thus failing to state a claim under the VPPA even assuming the broader approach set out

in *Yershov*." *Wilson*, 598 F. Supp. 3d at 92.

> c.   *Plaintiffs do not plead that Defendants had any way of knowing whether the Adobe SDK would transmit identifying information about the Plaintiffs.*

Finally, even assuming that the information allegedly disclosed was PII (it is not), and the

Complaint pleads facts showing Plaintiffs were actually identified in some capacity (it does not),

the Complaint does not allege that Defendants *knowingly* disclosed any PII to Adobe.

Only "knowing" disclosures of PII violate the VPPA or VCPA. 18 U.S.C. § 2710(b)(1);

N.Y. Gen. Bus. Law § 673(1). To plead a "knowing" violation, a plaintiff must allege facts

showing "that the video-service provider actually knew that it was disclosing: (1) a user's

identity; (2) the identity of the video material; and (3) the connection between the two—i.e., that

the given user had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86

F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (emphasis added). A plaintiff cannot rely on

conclusions or sprinkle in the word "knowing" here and there; she must "allege *facts* giving rise

to a reasonable inference that [the defendant] knowingly or willfully disclosed PII to someone

other than the consumer." *Mollett v. Netflix, Inc.*, No. 5:11-CV-01629-EJD, 2012 WL 3731542,

at *4 (N.D. Cal. Aug. 17, 2012) (emphasis added), *aff'd*, 795 F.3d 1062 (9th Cir. 2015).

Plaintiffs do not allege facts to support a knowing disclosure. As *In re Hulu* explained,

"the term 'knowingly' connotes actual knowledge. It is not enough . . . that a disclosure be

merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or she is

doing . . . and not act[ing] because of some mistake or accident." 86 F. Supp. 3d at 1095. Rather,

"'knowingly' means consciousness of transmitting the private information. It does not merely

mean transmitting the code." *Id.* Here, Plaintiffs allege numerous criteria—all outside of

Defendants' control and knowledge—that must be met before either device identifiers are disclosed, or any disclosed identifiers are associated with Plaintiffs. For example, Plaintiffs allege that whether the SDK would cause any transmissions depends on whether users chose to allow ad tracking, which is something Defendants cannot know. Similarly, Plaintiffs allege that for Adobe to be able to identify a person, that person's device data must be associated with a known Adobe ID that is also associated with an individual (rather than another device), another thing that Defendants would not know. Nor do Defendants have any way of knowing *who* is using a specific device at the time a transmission is made. To use the example above, it could be dad, mom, or either of their two kids watching "The Office" reruns on the family iPad. And finally, even if device information were transmitted and linked to a person, Plaintiffs do not allege how Adobe (much less how Defendants *knew* that Adobe could have) connected any device data to the video content a user watched.

### 2. Plaintiffs do not allege a "consumer" relationship with respect to the CNBC, NBC News, or NBC Sports Apps.

Plaintiffs additionally do not allege they are statutory "consumers" with respect to the CNBC, NBC News, or NBC Sports Apps (the latter two of which they don't even use).

The VPPA and VCPA are limited in scope. By their terms, the Acts only provides a right of action to "consumers." 18 U.S.C. § 2710(b); N.Y. Gen. Bus. Law § 673. The Acts each define "consumer" as "any renter, purchaser, or subscriber of goods or services" from a covered entity. 18 U.S.C. § 2710(a)(1); N.Y. Gen. Bus. Law § 672(1). Neither Act defines the term "subscriber." *Golden*, 2023 WL 5434378, at *9 .[8] "In evaluating whether a plaintiff is a subscriber [under the VPPA], courts have looked to dictionary definitions." *Carter v. Scripps Networks, LLC*, No. 22-

---

[8]    Neither Plaintiff alleges that they bought or rented any pre-recorded video content. Thus, their Complaint relies entirely on their status as "subscribers."

CV-2031 (PKC), 2023 WL 3061858, at *4 (S.D.N.Y. Apr. 24, 2023). Consistent with the plain meaning of the term, courts "have agreed that to be a 'subscriber' under the VPPA requires an 'ongoing commitment or relationship between the user and the entity which owns and operates the [website or] app.'" *Golden,* 2023 WL 5434378, at *9 (quoting *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017) and citing collected cases). While there is no corresponding analysis for the VCPA, the same analysis governs given that the statutory terms are identical in both Acts. *See Baptiste v. Apple Inc.*, No. 22-CV-02888-HSG, 2023 WL 2480745, at *2 (N.D. Cal. Mar. 13, 2023) (noting that the VCPA was modeled after the VPPA, and relying on VPPA statutory analysis with respect to similar terms found in the VCPA), *appeal filed sub nom. Lucila Baptiste v. Apple Inc.*, No. 23-15392 (9th Cir. Mar. 17, 2023).

Critically, "the courts to consider the question have further, overwhelmingly, held that, to qualify as a subscriber under the VPPA, a plaintiff must allege more than . . . having . . . merely downloaded a free mobile app[.]" *Golden*, 2023 WL 5434378, at *10 (citing *Perry*, 854 F.3d at 1341–43); *Ellis*, 803 F.3d at 1257–58 (same); *Salazar v. Nat'l Basketball Ass'n*, No. 1:22-cv-07935 (JLR), 2023 WL 5016968, at *2–3, *10 n.4 (S.D.N.Y. Aug. 7, 2023) (same)). As the Eleventh Circuit explained, free app users do not evidence any real commitment to an app provider, given that they are "free to delete the app without consequences whenever [they] like[], and never access its content again." *Perry*, 854 F.3d at 1342.

Here, Plaintiffs fail to allege any "commitment" to the non-Peacock NBC Apps and, thus, are not VPPA or VCPA subscribers. Initially, neither Plaintiff alleges that they even downloaded or used the NBC News or NBC Sports Apps and, thus, are not "consumers" with respect to them. Compl. ¶¶ 12-19. Nor does Plaintiff Campbell allege that he downloaded or used the CNBC App; he has no statutory relationship to the App either.

While Plaintiff Afriyie alleges she used the CNBC App, she is not a "subscriber" of the CNBC App. *Golden* is instructive. In that case, the plaintiff alleged that she watched prerecorded video content on the TODAY website and mobile app, which resulted in NBCU's collection and disclosure of her personal identifiers (i.e., her Facebook ID) and video viewing history. *Golden*, 2023 WL 5434378, at *2. But despite this alleged collection of identifiers and her "download[ing] and us[ing] Today.com's free mobile app to view video content," the plaintiff *did not allege* that she "paid for Today.com's mobile app (or any other service), created an account with NBCU, received an NBCU ID, or established an NBCU profile." *Id.* at *10. Without those details, the court held that she did not allege any "indicators of an ongoing, 'durable' relationship," despite downloading and using the app. *Id.* (quoting *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015)). Accordingly, the court concluded that "as to the mobile app and the website, the FAC does not plead any form of bilateral relationship, but merely the accessing of a service by a user [and, thus, the] pleadings are thus on all fours with . . . claims [that] have been dismissed for failure to plead subscriber status." *Id.*; *see also Lamb v. Forbes Media LLC,* No. 22-CV-06319-ALC, 2023 WL 6318033, at *12 (S.D.N.Y. Sept. 28, 2023) (following *Golden*'s analysis).

So too here. Plaintiff bases her CNBC App "subscriber" status on merely "download[ing] the app from either the App Store (on iOS devices) or Google Play (on Android devices)." Compl. ¶ 33. But the basic version of the CNBC App accessed by Plaintiff Afriyie requires no registration or payment to download and use, including to view video content. As *Perry* explains, because free CNBC App users like Afriyie can download, use, delete, and then later re-download the App without consequence, they evidence no commitment to Defendants and are not "subscribers" for the purposes of the VPPA or VCPA. 854 F.3d at 1342. While the Complaint

wishfully labels these individuals as "subscribers," without any allegations of a bilateral relationship, the facts pleaded here confirm that—as in *Golden*—they are merely App users and *not* VPPA or VCPA subscribers. *Golden*, 2023 WL 5434378, at *10.

Nor does the allegation that CNBC App users could gain "access to [exclusive] video content" change matters. Compl. ¶ 35. Recent VPPA case law has confirmed that VPPA consumers must buy, rent, or subscribe to a defendant's video content. *See, e.g.*, *Lamb*, 2023 WL 6318033, at *12. Accordingly, allegations that a plaintiff only accessed video content that is freely available to all cannot ground a claim under either VPPA or VCPA. *Carter*, 2023 WL 3061858, at *6 (accessing free content made the plaintiffs "no different than any of the other 9.9 million monthly visitors to the [defendant's] site"). That is exactly the case here. Plaintiff Afriyie (and other non-paying CNBC App users) alleges only that she downloaded and used CNBC App without payment or registration; she does not allege she is subscribed to any paid offering.  But as discussed above, "downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA." *Ellis*, 803 F.3d at 1257.

### 3. Defendants do not "rent" or "sell" prerecorded video content and, thus, are not subject to the Video Consumer Protection Act.

Finally, the Complaint does not allege facts demonstrating that Defendants are subject to the VCPA at all. While the VPPA and VCPA address similar conduct, they regulate different entities. The federal statue addresses a single category of regulated businesses—"video tape service providers"—defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Recent decisions have noted that these three lines of business (i.e., rental, sale, or delivery) correspond to three different business practices—rentals, sales, or subscriptions— addressed in by the VPPA. *Carter*, 2023 WL 3061858, at *6. But while the VCPA is modeled

after the VPPA, the law is narrower and only applies to entities engaged in two kinds of business: video rentals and video sales. N.Y. Gen. Bus. Law § 672(4, 5). The VCPA then includes different statutory sections regulating disclosures made by video *rental* companies (§ 673) and for ones engaged in *sales* (§ 674). The VCPA, however, includes no provision addressing businesses involved exclusively in the "delivery" of video materials to subscribers.

Here, the Plaintiffs do not allege that Defendants "rent" or "sell" any video materials. Accordingly, they are neither "video tape service providers" nor "video tape sellers" under the VCPA and, in turn, cannot be liable under Sections 673 or 674 of the Act.

### B.    Plaintiffs' GBL § 349 Claim Fails

Plaintiffs' GBL § 349 claim likewise fails. GBL § 349 "makes it unlawful to engage in '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in furnishing of any service' in New York." *Morales v. Apple, Inc.*, No. 22-CV-10872 (JSR), 2023 WL 5579929, at *2 (S.D.N.Y. Aug. 29, 2023). To state a claim, a plaintiff "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)).

At the outset, Plaintiffs' GBL § 349 allegations are beyond cursory and do not allege sufficient *facts* to support a claim. Plaintiffs make no effort to explain why the routine data practices alleged here would result in an actionable privacy harm or be material to any consumer: they just say that they were. *See* Compl. ¶ 151. That is not enough to survive federal pleading requirements or meet the requirements of GBL § 349. *See Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017), *as amended* (May 3, 2017) ("§ 349 injury has been recognized only

where confidential, individually identifiable information—such as medical records or a Social Security number—is collected without the individual's knowledge or consent").

Regardless, Plaintiffs purport to bring a GBL § 349 claim based on Defendants' "representations and omissions," arguing that Plaintiffs' relied on each. Compl. ¶¶ 151-152. Both approaches fail.

### 1.    Plaintiffs identify no misrepresentations.

First, Plaintiffs cannot state a claim based on any alleged misrepresentations because they do not identify any. "To adequately plead a N.Y. GBL claim premised on an affirmative misrepresentation, 'a plaintiff must ... identify the specific acts or practices alleged to be misleading.'" *Morales*, 2023 WL 5579929, at *2 (quoting *Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 453 (S.D.N.Y. 2022)). Such allegations are "crucial because, to determine whether a reasonable consumer would have been misled, the Court must know the context of the representations," given that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Vivar v. Apple Inc.*, No. 22 CIV. 0347 (VM), 2022 WL 4227309, at *6 (S.D.N.Y. Sept. 12, 2022) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)). Thus, where a complaint "repeatedly references . . . 'misrepresentations,' [but] fails to describe them, . . . [it] therefore does not plausibly plead any misleading statements sufficient to survive a motion to dismiss. *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 n.10 (S.D.N.Y. 2016) (quoting *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010)).

Here, Plaintiffs' misrepresentation claim fails from the outset because Plaintiffs do not identify any allegedly "deceptive representations" Defendants made. *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 348 (S.D.N.Y. 2020). Indeed, they do not identify *any* representations

made by Defendants at all. *See*, *e.g.*, Compl. ¶¶ 151-152 (referencing but not identifying Defendants' "representations"). Because the plaintiffs "never identif[y] the specific advertisements or statements at issue," their GBL § 349 should be dismissed. *Dixon v. Ford Motor Co.*, No. 14–CV–6135 (JMA)(ARL), 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015).

Further, to plead an affirmative misrepresentation claim, a plaintiff must allege that he or she "saw the misleading statements of which they complain before they purchased or came into possession of" the relevant product. *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020). Plaintiffs do not do so. Their GBL § 349 claim "must be dismissed." *Morales*, 2023 WL 5579929, at *3.

### 2. Plaintiffs do not allege NBCU's Privacy Policy—which describes all the conduct they complain of—was unavailable to them.

Plaintiffs also do not allege a plausible omission claim. To state a GBL § 349 omission claim, "it is not sufficient for a plaintiff to point solely to the [alleged] omission." *Dimond v. Darden Rests., Inc.*, No. 13 CIV. 5244 KPF, 2014 WL 3377105, at *13 (S.D.N.Y. July 9, 2014); *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) ("[B]ecause this is a purportedly deceptive act based on an omission, it is not sufficient for the plaintiffs to point to the omission alone."). Rather, "the plaintiff must show why the omission was deceptive by alleging that the information omitted was solely within the defendant's 'possession or that a consumer could not reasonably obtain such information.'" *Dimond*, 2014 WL 3377105, at *13; *accord Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022) ("[A] plaintiff claiming an omission constitutes actionable deception must show either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information.").

Here, Plaintiffs' GBL § 349 omission claim fails because there was no omission: *all* the

data practices they complain about were disclosed in the same, publicly available NBCU Privacy Policy referenced in the Complaint. As discussed *supra*, § II.C, that document explains (i) what information the NBCU Apps collect (including device identifiers), (ii) to whom that information is disclosed (including Advertisers and other third parties), and (iii) the purposes for those disclosures (including for analytics and targeted advertising). Plaintiffs do not explain what was omitted from these disclosures or how those omissions were materially misleading. Nor do they allege that they "could not reasonably obtain [this] information." *Kyszenia*, 583 F. Supp. 3d at 360. Plaintiff's "omission" claim fails as a result.

### C.    Plaintiffs' Unjust Enrichment Claim Fails

Finally, Plaintiffs tack on a claim for unjust enrichment, alleging that Defendants "wrongfully disclosed" Plaintiffs' "PII and video viewing history" to third parties and were enriched at Plaintiffs' expense. Compl. ¶ 158. As several other courts have held with respect to recent VPPA cases, the claim is duplicative of Plaintiffs' other claims and should be dismissed.

Unjust enrichment "is available as a cause of action 'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Goldemberg v. Johnson & Johnson Consumer Cos.,* 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (quoting *Corsello*, 18 N.Y.3d at 790). It "is not a catchall cause of action to be used when others fail .... An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). *See also*, *e.g.*, *Freedom Mortg. Corp. v. Tschernia*, 20 Civ. 1206 (AJN), 2021 WL 1163807, at *5–6 (S.D.N.Y. Mar. 26, 2021) (unjust enrichment claim dismissed as duplicative of breach of contract claim where the "theories stand[] or fall[] on the exact same facts"); *In re Columbia Tuition Refund Action*, 523

F. Supp. 3d 414, 430 (S.D.N.Y. 2021) ("Plaintiffs' unjust enrichment claims are easily dismissed, as the claims rest on the same factual allegations as their contract claims."); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) ("Because ... Plaintiff's unjust enrichment claim under New York law is based on the same factual allegations underlying its contract and tort claims.... Plaintiff's unjust enrichment claim under New York law will be dismissed as duplicative of its contract and tort claims.").

Here, the Complaint alleges no additional facts in support of Plaintiffs' claim for unjust enrichment. Rather, it turns on the same allegedly tortious conduct—i.e., Defendants' purported collection and disclosure of "PII and viewing history"—that Plaintiffs say violates the VPPA, VCPA, or GBL § 349. Thus, and as Judge Englemayer explained in *Golden*, "to the extent that the [Plaintiffs' other claims] succeed, the unjust enrichment claim is duplicative and if the [other claims are] defective, an unjust enrichment claim cannot remedy the defects." 2023 WL 5434378, at *13 (cleaned up); *accord Gardener v. MeTV*, No. 22 CV 5963, 2023 WL 4365901, at *5 (N.D. Ill. July 6, 2023) ("Plaintiffs' unjust enrichment claim is dependent on its VPPA claim, so the Court similarly dismisses it . . . .").

## V.    CONCLUSION

Plaintiffs seek to capitalize on the recent wave of VPPA litigation but rely on theories of liability that have been rejected for years. They do not and cannot state a claim. Accordingly, their Complaint should be dismissed with prejudice.

Dated: January 19, 2024                 Respectfully submitted,


                                        By: /s/ Jeffrey Landis
                                            Jeffrey Landis
                                            ZWILLGEN PLLC
                                            1900 M Street NW, Suite 250
                                            Washington, DC 20036
                                            Telephone: (202) 296-3585
                                            Facsimile: (202) 706-5298
                                            Email: jeff@zwillgen.com

                                            Benjamin S. Thomassen*
                                            ZWILLGEN PLLC
                                            One North LaSalle St. Suite 4600
                                            Chicago, IL 60602
                                            Main: (312) 685-2278
                                            Email: ben.thomassen@zwillgen.com

                                            *Pro hac vice application forthcoming

                                            Counsel for Defendants
                                            NBCUniversal Media, LLC and Peacock TV, LLC