**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMMA AFRIYIE and ROY CAMPBELL, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>NBCUNIVERSAL MEDIA, LLC and PEACOCK TV, LLC,<br><br>          Defendants. | Case No. 1:23-cv-09433-VSB<br><br>Hon. Vernon S. Broderick |

**<u>DEFENDANTS' MOTION TO DISMISS FIRST AMENDED</u>**
**<u>CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND .........................................................................................................3

    A.    The NBCU Apps .............................................................................................3

    B.    NBCU Apps' Use of SDKs..............................................................................4

        1.    The Adobe Experience SDK................................................................4

            a.    *Data transmitted to Adobe* .............................................4

            b.    *Adobe's use of Adobe IDs in connection with (i) data received from the NBCU Apps and (ii) data stored by Adobe* .......................6

        2.    The mParticle SDK ............................................................................7

    C.    NBCU Apps' Terms and Privacy Policy .................................................8

    D.    The Named Plaintiffs' Experiences ..............................................................9

III.    LEGAL STANDARD..................................................................................................10

IV.    ARGUMENT .............................................................................................................10

    A.    Plaintiffs' Video Privacy Claims Fail ................................................11

        1.    The FAC does not allege the knowing disclosure of any "personally identifiable information"...........................................................11

            a.    *"Unknown user information," like device identifiers, is not personally identifiable information.*................................11

            b.    *Even if device-related information could identify individuals, Plaintiffs do not plead any identification here.*............................15

            c.    *Plaintiffs do not plead that Defendants had any way of knowing whether the Adobe SDK would transmit identifying information about the Plaintiffs.* ........................................17

        2.    Plaintiffs do not allege a "consumer" relationship with respect to the CNBC News, NBC News, or NBC Sports Apps ......................................18

        3.    Defendants do not "rent" or "sell" prerecorded video content and, thus, are not subject to the Video Consumer Protection Act. ...................20

B.  Plaintiffs' GBL § 349 Claim Fails ...................................................................20

    1.  The FAC alleges neither alleges an injury or materiality ..........................21

    2.  The FAC identifies no misrepresentations.................................................22

    3.  The FAC identifies no actionable omissions. ...........................................22

C.  Plaintiffs' Unjust Enrichment Claim Fails...........................................................24

V.  CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................10, 15, 17

*Austin-Spearman v. AMC Network Ent. LLC*,
    98 F. Supp. 3d 662 (S.D.N.Y. 2015) ...................................................................................19

*Belfiore v. Procter & Gamble Co.*,
    94 F. Supp. 3d 440 (E.D.N.Y. 2015) ..................................................................................22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................10

*Bellin v. Zucker*,
    6 F.4th 463 (2d Cir. 2021) ....................................................................................................8

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) ................................................................................................24

*Burgess v. United States*,
    553 U.S. 124 (2008) ............................................................................................................12

*Carter v. Scripps Networks, LLC*,
    2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023) .....................................................................20

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010) .................................................................................22

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) .................................................................................21

*In re Columbia Tuition Refund Action*,
    523 F. Supp. 3d 414 (S.D.N.Y. 2021) .................................................................................25

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) .........................................................................................................25

*Dimond v. Darden Rests., Inc.*,
    2014 WL 3377105 (S.D.N.Y. July 9, 2014) ..................................................................22, 23

*DiMuro v. Clinique Lab'ys, LLC*,
    572 F. App'x 27 (2d Cir. 2014) ...........................................................................................11

*Dixon v. Ford Motor Co.*,
    2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ....................................................................22

*Eddystone Rail Co. v. Bank of Am., N.A.*,
    2023 WL 2507059 (S.D.N.Y. Mar. 13, 2023) .................................................. 16-17

*Eichenberger v. ESPN, Inc.*,
    2015 WL 7252985 (W.D. Wash. May 7, 2015)..............................................................14

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ...............................................................12, 13, 14, 15

*Ellis v. Cartoon Network, Inc.*,
    803 F.3d 1251 (11th Cir. 2015) ................................................................... 14, 19-20

*Ellis v. Cartoon Network, Inc.*,
    2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ...........................................14, 19, 20

*Gardener v. MeTV*,
    2023 WL 4365901 (N.D. Ill. July 6, 2023)..............................................................25

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014).......................................................... 24-25

*Golden v. NBCUniversal Media, LLC*,
    2023 WL 5434378 (S.D.N.Y. Aug. 23, 2023)......................................... 8, 18-19, 25

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002) .......................................................................................21

*Greene v. Clean Rite Ctrs., LLC*,
    2024 WL 328436 (E.D.N.Y. Jan. 29, 2024) ........................................................21

*Hu v. City of New York*,
    927 F.3d 81 (2d Cir. 2019)...............................................................................10

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...........................................................17, 18

*In re Hulu Privacy Litig.*,
    2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ..................................................12, 17

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016)........................................................................ 13, 14-15

*In re Sling Media Slingbox Advert. Litig.*,
    202 F. Supp. 3d 352 (S.D.N.Y. 2016)...................................................................22

*Koch v. Acker, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012) ......................................................................................21

*Kyszenia v. Ricoh USA, Inc.*,
　　583 F. Supp. 3d 350 (E.D.N.Y. 2022) ................................................................23

*Lamb v. Forbes Media LLC*,
　　2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) ....................................................19

*Locklear v. Dow Jones & Co.*,
　　101 F. Supp. 3d 1312 (N.D. Ga. 2015) ...............................................................14

*Lugones v. Pete & Gerry's Organic, LLC*,
　　440 F. Supp. 3d 226 (S.D.N.Y. 2020) .................................................................22

*Martin v. Meredith Corp.*,
　　657 F. Supp. 3d 277 (S.D.N.Y. 2023) .................................................................12

*Mollett v. Netflix, Inc.*,
　　2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) ....................................................17

*Mollett v. Netflix, Inc.*,
　　795 F.3d 1062 (9th Cir. 2015) ............................................................................15

*Morales v. Apple, Inc.*,
　　2023 WL 5579929 (S.D.N.Y. Aug. 29, 2023) ..............................................20, 22

*Myers v. Wakefern Food Corp.*,
　　2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ........................................................24

*Ohanian v. Apple Inc.*,
　　2022 WL 826415 (S.D.N.Y. Mar. 18, 2022) .........................................................8

*Orlander v. Staples, Inc.*,
　　802 F.3d 289 (2d Cir. 2015) ...........................................................................20-21

*Pelman v. McDonald's Corp.*,
　　237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................................................................23

*Perry v. Cable News Network, Inc.*,
　　854 F.3d 1336 (11th Cir. 2017) .........................................................................19

*Robinson v. Disney Online*,
　　152 F. Supp. 3d 176 (S.D.N.Y. 2015) .................................................12, 13, 14, 15

*Salazar v. Nat'l Basketball Ass'n*,
　　2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) ......................................................19

*Samuels v. Air Transp. Loc. 504*,
　　992 F.2d 12 (2d Cir. 1993) .................................................................................10

*Soto v. Disney Severance Pay Plan*,
    26 F.4th 114 (2d Cir. 2022) ...................................................................10

*United States v. Martin*,
    974 F.3d 124 (2d Cir. 2020) .................................................................12

*United States v. Tabb*,
    949 F.3d 81 (2d Cir. 2020) ...................................................................14

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) ............................................................21

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022) ..............................................13, 14, 15, 16

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ................................................................16

**Statutes**

Video Privacy Protection Act, 18 U.S.C § 2710 .......................................... *passim*

N.Y. Gen. Bus. Law § 672 ................................................................. *passim*

N.Y. Gen. Bus. Law § 673 ...............................................................17, 18, 20

N.Y. Gen. Bus. Law § 674 .........................................................................20

N.Y. Gen. Bus. Law § 349 ................................................................. *passim*

**Rules**

Fed. R. Civ. P. 8 .................................................................................10

Fed. R. Civ. P. 12(b)(6) ..........................................................................10

## I.    INTRODUCTION

In their original motion to dismiss, NBCUniversal Medial, LLC ("NBCU") and Peacock TV, LLC ("Peacock") identified core—and dispositive—deficiencies with Plaintiffs' theories of liability under the Video Privacy Protection Act, 18 U.S.C § 2710 (the "VPPA"), the New York Video Consumer Privacy Act, N.Y. Gen. Bus. Law § 672 (the "VCPA"), Section 349 of the New York Deceptive Trade Practices Act ("GBL § 349"), and for unjust enrichment. Plaintiffs' claims under the VPPA and VCPA failed primarily because their device-centric theory of "personally identifiable information" ("PII")—a required element of each statutory claim—has been rejected by nearly every court to consider it, including by the Ninth and Third Circuits, along with courts in this district. The VPPA and VCPA claims failed for other reasons as well, including because the complaint did not allege facts showing that any identifying disclosures occurred or that Defendants are even subject to the VCPA. Plaintiffs' other claims fared no better: the GBL § 349 claim also lacked factual support (and, thus, did not identify any actionable misrepresentation or omission), and the unjust enrichment claim alleged nothing "unjust" apart from Defendants' purported statutory violations. And more generally, Defendants' motion explained that the vast majority of the complaint made allegations that had no relevance whatsoever to the Plaintiffs' claims:  including allegations concerning NBCU Apps that neither Plaintiff used, and disclosures to third parties that never received any information about either Plaintiffs or their devices.

In lieu of opposing Defendants' motion, Plaintiffs filed an amended complaint. Dkt. 24 (the "FAC"). The amendment, however, attempts to addresses only *one* basis for dismissal identified in the prior motion to dismiss with respect to Plaintiff Afriyie's (but not Campbell's) VPPA claim: Plaintiff Afriyie now alleges that she paid for a CNBC Pro TV subscription.

Other than this single change, the FAC does nothing more than double down on all the

flaws identified above. Accordingly, like the original complaint, the FAC should be dismissed outright. First, and as before, the VPPA and VCPA claims fail because any alleged disclosures from the Peacock or CNBC News Apps to Adobe (the only disclosures Plaintiffs claim affected them) do not and cannot state a claim:  the information disclosed does not constitute statutory PII and, even if it did, Plaintiffs still don't allege facts demonstrating that those Apps disclosed *any* identifying information *about them*. Nor do Plaintiffs allege that they have used (let alone are subscribers of) the NBC News or Sports Apps, or that the Defendants are subject to the VCPA at all.

Second, the FAC now makes clear that Plaintiffs' GBL § 349 claim is based on Defendants' alleged failure to obtain the consents required under the VPPA and VCPA. That creates more problems than it solves: neither the VPPA or VCPA regulates deceptive or misleading conduct and, thus, cannot ground a GBL claim. Moreover, Plaintiffs still fail to allege any facts supporting their misrepresentation claim, or account for the fact that the data practices underlying their claim are publicly disclosed in the many documents the FAC cites, including Defendants' Privacy Policy.

Third, Plaintiffs still fail to allege any independent basis to support their unjust enrichment claim and, instead, tether the count to their other claims. As many other courts have held, the unjust enrichment claim is therefore duplicative and subject to dismissal.

Plaintiffs failure to cure the core deficiencies presented in their original complaint confirms they cannot allege facts supporting any claim for relief. The FAC should therefore be dismissed with prejudice.

## II.    BACKGROUND

### A.    The NBCU Apps

NBCU owns and operates a number of mobile applications that incorporate streaming video, including the Peacock TV App, the CNBC News App, the NBC News App, and the NBC Sports App (the "NBCU Apps"). FAC ¶ 2. As described in the FAC, each of these apps allow users to view prerecorded video content, ranging from TV shows and movies (in the case of the Peacock TV App) to clips concerning news, politics, and sports (for the rest). *Id.* The Peacock TV App *requires* that users register to access video content. *Id.* ¶ 29. The others do not.

**Peacock TV App.** The Peacock TV App is an entertainment-based video streaming app that offers "over 10,000 hours of prerecorded TV shows, movies, and more." *Id.* ¶ 27. While the Peacock App can be freely downloaded by iOS or Android users, the FAC alleges that only registered and paying subscribers can access its video content. *Id.* ¶¶ 29-30.

**CNBC News App.** The CNBC News App corresponds to the popular CNBC cable news channel and website. The app allows users "to view pre-recorded video content such as business news, tech news, financial news, and culture." *Id.* ¶ 31. Anyone can download the CNBC App and use it to watch pre-recorded video content; there is no requirement that a CNBC App user create or pay for an account to watch videos. *Id.* ¶ 33 ("To subscribe to the CNBC App, users must download the app[.]"). The CNBC App offers a "premium video-viewing service," called CNBC Pro TV, which requires that subscribers pay an annual or monthly subscription fee, and provide an email address. *Id.* ¶¶ 33, 34.[1]

**NBC News.** The NBC News App provides access to news articles and media reported by

---

[1]     The FAC erroneously says, without pleading any supporting facts, that CNBC App users "must provide . . . their email address." FAC ¶ 33. That is false:  anyone can download the CNBC App and view its free video content without providing an email address.

a variety of news-related sources. *Id.* ¶ 35. Anyone can use the NBC News App simply by downloading it. *Id.* ¶ 37. Neither Plaintiff alleges they used the NBC News App.

**NBC Sports.** The NBC Sports App provides access to sport-related media, such as highlights from sporting events. *Id.* ¶ 39. Anyone can download the NBC Sports App and use it to watch pre-recorded video content; no payment or account creation is required. *Id.* ¶ 41. Users of the NBC Sports App have the option to either use an NBCUniversal profile or link their television cable provider to access additional video content only available to such users. *Id.* Neither Plaintiff alleges they used the NBC Sports App.

**B.     NBCU Apps' Use of SDKs**

Plaintiffs allege that, like most apps, the NBCU Apps include software components called "SDKs." FAC ¶ 43. Plaintiffs allege these SDKs allow Defendants to "receive[] analytical insights about subscribers, including subscribers' video viewing history," and "improve their services, tailor their product offerings to subscribers, and market and sell other products." *Id.* ¶ 45. Plaintiffs allege that the SDKs also facilitate the transmission of "subscribers' data to third parties." *Id.* ¶ 47. While the FAC obliquely references "other SDKs" used in the NBC Apps, it only alleges facts about two: "the Adobe Experience SDK" and the "mParticle SDK."

**1.     The Adobe Experience SDK**

Plaintiffs allege that by using the Adobe Experience SDK, (i) each of the NBCU Apps transmitted—or could have transmitted—data to third party Adobe and (ii) Adobe can match some of the transmitted data to "unique customer profiles for individuals" that it maintains. FAC ¶ 55. The allegations underlying those processes are described below.

*a.     Data transmitted to Adobe*

Plaintiffs allege that two categories of data are transmitted via the Adobe Experience

4

SDK to third party Adobe.

**Video viewing history.** First, Plaintiffs allege the Adobe Experience SDK transmits information about the videos that users watch to Adobe. FAC ¶¶ 48-49. Plaintiffs allege that the transmitted video viewing information includes "Video Titles" or "Video IDs," which Plaintiffs describe as "identifiers that allow someone to uniquely identify a specific video, i.e., a numeric identifier, a full URL, or other identifier." *Id.* ¶¶ 49, 5 n.2. Plaintiffs don't allege *Adobe* can link Video IDs to specific videos—only that "someone" can do it in some undescribed way.

**Device-related data.** Second, Plaintiffs allege that the Adobe Experience SDK transmits two types of device- or app-related data to Adobe: IDFAs or IDFVs (for iOS devices) and AAIDs (for Android devices). FAC ¶ 49. The FAC describes IDFAs and AAIDs as "advertising identifiers" that Apple and Google assign to particular iOS and Android devices, respectively. *Id.* ¶ 5 n.4. IDFVs don't identify devices but, instead, are numbers assigned to a group of apps on a device from a single vendor and, unlike IDFAs or AAIDs, are not persistent identifiers and can change based on a user's activity. *Id.* ¶ 5 n.5. Although the FAC labels all those data types as "PII," Plaintiffs do not claim that IDFAs, IDFVs, or AAIDs actually identify individuals; rather, they acknowledge they are associated with *devices* (e.g., IDFAs are associated with specific iPhones and iPads, IDFVs are associated with apps on an iOS device, and AAIDs are associated with specific Google Pixel phones or Amazon Fire Tablets). As such, if a family of four shares one iPad and uses the same Peacock TV App, *one* IDFA or IDFV will be transmitted to Adobe by the Adobe SDK regardless of who is using it. The FAC thus acknowledges that device-related data are not "personally identifiable data" but, instead, are "unknown user data." *Id.* ¶ 56.

According to Plaintiffs, individual device settings determine whether any device transmits IDFAs or AAIDs. For iOS devices, the FAC explains that users must "opt-in" to

allowing device identifiers to be shared with third parties like Adobe, an option selected by only 21% of all iOS users. *Id.* ¶ 64. Plaintiffs similarly allege that Android device users are given the option of "turn[ing] off collection of advertising identifiers on their mobile devices," but do not allege how may Android users chose to permit device tracking. *Id.* ¶ 63.

**Undefined data.** The FAC alleges that the Adobe Experience SDK included in the Peacock and CNBC News Apps discloses "New Relic IDs" to Adobe. *Id.* ¶¶ 50, 51. It also alleges that the Peacock App discloses "User IDs." *Id.* ¶ 50. The FAC, however, does not allege what either a "New Relic ID" or "User ID" is.

    b. *Adobe's use of Adobe IDs in connection with (i) data received from the NBCU Apps and (ii) data stored by Adobe*

Plaintiffs allege that Adobe uses a third category of data—an Adobe-created Adobe ID or Adobe Experience Cloud ID ("ECID")—to associate device data received from third parties with "profiles [Adobe maintains] about individual consumers." FAC ¶ 53, 62. Plaintiffs allege that if an individual uses one of the NBCU Apps, Adobe will "assign" an Adobe ID to any data received. *Id.* ¶ 62. According to Plaintiffs, if the individual transmits a device related ID to Adobe, Adobe can "link" that device data with an assigned Adobe ID. *Id.* ¶ 52. Plaintiffs further allege if that linking occurs and the same device ID is again transmitted to Adobe in connection with "video viewing history," Adobe can "attribute" that video viewing history "to an individualized profile in its databases." *Id.* ¶ 68. Plaintiffs do not allege these Adobe profiles become *personally* associated with an individual, rather than, for example, with a unique—but not personally attributed—device identifier.

Critically, the FAC repeatedly alleges that only *Adobe* can "link" device IDs to its own internal profiles (which themselves may or may not be associated with any consumer's device-related data). *Id.* ¶ 52. The FAC does not explain when, how, or whether any device IDs are

eventually linked to any personally identifying information about a consumer (e.g., someone's actual name, as opposed to other "unknown user data," *id.* ¶ 56).

### 2.      The mParticle SDK

Plaintiffs also allege that by using the mParticle SDK, the CNBC News App (but not the Peacock TV App), as well as the NBC News and NBC Sports Apps they do not claim they ever used, transmit certain information to third party mParticle. Like the Adobe SDK, the mParticle SDK allegedly transmits "video viewing history" to mParticle. *Id.* ¶ 69. The FAC also alleges that the other information transmitted by the mParticle SDK differs depending on the App:

(i)      for the CNBC News App, Plaintiffs say that "New Relic IDs" and Android IDs are transmitted for Android devices, but do not allege that any data is transmitted for iOS devices, *id.* ¶ 72.

(ii)     for the NBC News App, Plaintiffs say Adobe IDs and AAIDs are transmitted for Android devices, but do not allege that any data is transmitted for iOS devices, *id.* ¶ 71;

(iii)    for the NBC Sports App, Plaintiffs say "AAID, , User ID, and email [addresses]" for Android devices are transmitted, and that "email, mParticle ID, and IDFV" are transmitted for iOS devices, *id.* ¶ 70.

The FAC alleges that mParticle can use information in its possession to associate this collected data with its own internal "user profiles." As Plaintiffs describe it, the process is similar to how the Adobe ID works: as mParticle receives information from apps (e.g., AAIDs), it determines whether that information matches any of its internal "user profiles." *Id.* ¶ 78. According to Plaintiffs, if there is a match, "mParticle returns a matching user profile," but if there is no match, mParticle assigns a new "mParticle ID based on the user's device ID." *Id.* As with Adobe, the FAC does not allege at what point, if ever, mParticle is able to associate the device-related information it receives to an actual person. And as with Adobe, Plaintiffs allege the only way that mParticle even can identify users is by using device-based data based on the "user profiles" it—and it alone—has access to.

### C.    NBCU Apps' Terms and Privacy Policy

The FAC acknowledges that use of the NBCU Apps is governed by either NBCU's or Peacock's Terms of Use, and the NBCU Privacy Policy. For example, it alleges that New York law applies to Plaintiffs' claims because "NBCUniversal's Terms of Service" and "Peacock's Terms of Service" call for it. *Id.* ¶¶ 116, 117. Additionally, Plaintiffs note that these same "terms and conditions each include a forum selection clause requiring actions to be brought exclusively in the federal or state courts located in New York, New York." *Id.* ¶ 25.

Plaintiffs expressly reference the "NBCUniversal Privacy Policy" (the "Privacy Policy") as it existed on December 16, 2022. *Id.* ¶ 25 n.7. The NBCU Privacy Policy was incorporated into both the NBCU Terms and Peacock Terms at that time. *See* Exhibits A at 1 and B and 1.[2]

The NBCU Privacy Policy lists the categories of information that the NBCU Apps collect and disclose, along with the purposes of that collection and disclosure. For example, the Privacy Policy explains that Defendants "collect, use, and share information from or about you when you use our websites [and] downloadable applications[.]" Ex C at 1. It goes on to explain that the NBCU Apps collect, among other data, "device information and identifiers," including "advertising and app identifiers," along with the "content you view." *Id.* at 2, 3. It also notes that Defendants collect information from third parties, again including "device . . . or other unique

---

[2]    Copies of the NBCU Terms of Service, the Peacock Terms of Service, and the NBCU Privacy Policies as they existed on December 16, 2022 are attached as Exhibits A, B, and C to the Landis Declaration, respectively. As described in the Landis Declaration, the Exhibits were taken using the Internet Archive's Wayback Machine. Because they are explicitly referenced, relied on, and even cited to in the Complaint, they are incorporated by reference and can be considered with this Motion. *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021); *see also Ohanian v. Apple Inc.,* No. 20 CIV. 5162 (LGS), 2022 WL 826415, at *2 n.1 (S.D.N.Y. Mar. 18, 2022). Because the exhibits were taken from the Internet Archive, they are also subject to judicial notice and can be considered for that reason as well. *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 (PAE), 2023 WL 5434378, at *10 n.14 (S.D.N.Y. Aug. 23, 2023) (taking judicial notice of similarly archived webpages).

identifiers." *Id.* at 4. It explains that this same information, including "device information and identifiers," is shared with "Advertisers, Advertising Networks, and Other Third Parties." *Id.* at 6; *see also id.* at 7. The FAC explains that Defendants do this "to improve their services, tailor their product offerings to subscribers, and market and sell other products," FAC ¶ 45, which—coincidentally—is almost word-for-word what the Privacy Policy explains, Ex. C at 5-6 (explaining that information is shared "to better tailor serves, products, marketing, and advertising on our Services").

### D.    The Named Plaintiffs' Experiences

Plaintiff Afriyie claims she downloaded the Peacock TV App in 2021 and pays for an annual subscription. FAC ¶ 13. She also claims she downloaded the CNBC News App in 2021 and paid for a CNBC Pro TV subscription. *Id.* ¶ 14. She says she used the Peacock TV and CNBC News Apps to view pre-recorded video content. *Id.* ¶ 15. Plaintiff Afriyie has an iOS mobile device, *id.* ¶¶ 13, 15. She alleges that she opted-in to "personalized ad tracking . . . . at various points" when the Peacock and CNBC News Apps were on her iPhone, *id.* ¶ 15, but doesn't allege whether any of those "various points" coincided with her use of those Apps to watch any videos. She also does not allege whether either Adobe or mParticle had an existent user profile for her, or whether ones were "assigned to" or "created for" her when she started using the Peacock or CNBC Apps. Plaintiff Afriyie does not allege she used either the NBC News or NBC Sports Apps, or that she used any NBCU App with an Android device.

Plaintiff Campbell claims he downloaded the Peacock TV App in 2022 and pays for a monthly subscription. *Id.* ¶ 18. He is also an iOS user. *Id.* Plaintiff Campbell does not allege that he ever opted-in to ad tracking. He also does not allege whether Adobe or mParticle had an existent user profile for him, or whether ones were "assigned to" or "created for" him when he

started using the Peacock TV App. Plaintiff Campbell does not allege that he used the CNBC, NBC News, or NBC Sports Apps, or that he used any NBCU App with an Android device.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* The rule that a court accept as true allegations in a complaint is "inapplicable to legal conclusions," *id.*, and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief" is "a context specific task" that requires a court "to draw on its judicial experience and common sense." *Id.* "In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993)). A court "must dismiss a claim if a plaintiff pleads himself out of court by alleging facts which show that he has no claim." *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 120 (2d Cir. 2022) (cleaned up).

## IV.    ARGUMENT

The four counts asserted in the FAC all turn on the Peacock TV App's (for both Plaintiffs) and the CNBC News App's (for Plaintiff Afriyie only) alleged transmission of device-

generated data to third party Adobe. While the FAC devotes significant space to discussing NBC Apps that Plaintiffs *did not use* (the NBC News and NBC Sports App, or the CNBC News App for Plaintiff Campbell) or third-party disclosures that *did not affect* the Plaintiffs (i.e., alleged data transmissions to third party mParticle from non-iOS devices), none of those allegations address the Plaintiffs' experiences and, thus, are not at issue here. *See DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (affirming dismissal of claims based on products the plaintiffs did not purchase). For the reasons discussed below, the allegations pertaining to the Plaintiffs named in the FAC do not—and cannot—state any claim for relief.

### A.    Plaintiffs' Video Privacy Claims Fail

The gravamen of Plaintiffs' dispute centers on Defendants' alleged violations of the VPPA and VCPA. But the facts alleged in the FAC cannot state a claim under those statutes for numerous reasons, including that (i) Plaintiffs do not allege a disclosure of statutory PII; (ii) Plaintiffs do not establish that they are VPPA or VCPA "consumers" with respect to the NBCU Apps they did not use; and (iii) Plaintiffs do not allege that Defendants are subject to the VCPA.

#### 1.    The FAC does not allege the knowing disclosure of any "personally identifiable information"

Plaintiffs' claims fail because they do not allege the disclosure of statutory PII—under *either* the majority (used by the Third and Ninth Circuits, and two S.D.N.Y district courts) or minority (used only in the First Circuit) definition of that term. And even if PII were transmitted, the allegations here, taken as true, show that Defendants could not have done so knowingly.

##### a.    *"Unknown user information," like device identifiers, is not personally identifiable information.*

Device-related information is not PII under either the VPPA or the VCPA. The VPPA and VCPA both regulate the disclosure of PII, defined as "information which *identifies a person* as having requested or obtained specific video materials or services[.]" 18 U.S.C. § 2710 (a)(3)

(emphasis added); N.Y. Gen. Bus. Law § 672(3). The scope of the two statutes differs slightly. Under the VCPA, PII is limited to information that—by itself—identifies a person as having requested or obtained certain video materials. N.Y. Gen. Bus. Law § 672(3) ("The term 'personally identifiable information' *means* any information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider or video tape seller.") (emphasis added). Thus, if information does not itself identify a person, it is not covered by the VCPA. *United States v. Martin*, 974 F.3d 124, 138 (2d Cir. 2020) (citing *Burgess v. United States*, 553 U.S. 124, 130 (2008)) ("As a rule, a definition which declares what a term means excludes any meaning that is not stated."). The VPPA is slightly broader in that it defines PII as "*includ[ing]* information which identifies a person," 18 U.S.C. § 2710(a)(3), which covers "more information than that which, by itself, identifies an individual as having watched certain videos." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017). But even under the VPPA, the information "must, at the very least, identify a *particular* person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (emphasis in original) (citing *In re Hulu Privacy Litig.,* No. C 11-03764-LB, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014)).[3]

Here, the FAC fails to allege the disclosure of PII under either statute because none of the disclosed information identifies a *person*. Initially, there is no question that the device-related

---

[3]     In addition to identifying a person, PII must show "that a person has requested or obtained specific video materials or services." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023) (cleaned up). Plaintiffs do not allege enough to satisfy that element either, given that they only allege the disclosure of *either* "Video Titles" *or* "Video IDs"—which may only include a "numeric identifier" (which Plaintiffs do not allege an "ordinary person" could decipher) or "a full URL." FAC ¶ 5 n.2. *See Martin*, 657 F. Supp. 3d at 284-85 (alleged disclosures of URLs was not an actionable disclosure of PII).

information allegedly disclosed by the Peacock and CNBC News Apps (the IDFAs of Plaintiffs' iOS devices, or the IDFVs associated with the apps on those devices) does not—by itself—identify either Plaintiff. Rather, as the FAC acknowledges, it is "unknown user data" that identifies *devices* or *apps on devices* and must be combined with other data before it can personally identify any individual. FAC ¶¶ 7, 56. Because Plaintiffs do not allege the disclosure of any information that "identifies a person," they cannot state a claim under the VPCA. N.Y. Gen. Bus. Law § 672(3).

Nor do Plaintiffs allege the disclosure of PII under the VPPA. As Judge Rakoff recently explained, a "majority of courts"—including the Third and Ninth Circuits, along with two courts from this District—have interpreted the VPPA's definition of PII to "only refer[] to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)); *see also Eichenberger*, 876 F.3d at 985 (adopting *In re Nickelodeon*'s ordinary person definition). *Robinson* is instructive. In that case, the plaintiff alleged that (i) his viewing history and a device ID (the serial number of his Roku device) was transmitted to Adobe, and—exactly as Plaintiffs allege here—(ii) Adobe could combine this data with its own information to personally identify the plaintiff. *Robinson*, 152 F. Supp. 3d at 180. The *Robinson* court rejected the theory, correctly reasoning that the disclosed information "must itself do the identifying that is relevant for purposes of the VPPA (literally, 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Id.* at 182.

Other courts have taken the exact same approach with respect to the same—or similar—

device-related identifiers. *See*, *e.g.*, *Ellis v. Cartoon Network, Inc.*, No. 1:14–CV–484–TWT, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015) (PII not disclosed where the third party to whom an AAID and viewing history were provided had to "collect information from other sources" to identify the plaintiff); *Locklear v. Dow Jones & Co.*, 101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d 1251 (11th Cir. 2015) ("[A] Roku serial number, without more, is not akin to identifying a particular person, and therefore, is not PII.") (quotations omitted); *Eichenberger v. ESPN, Inc.*, C14–463, 2015 WL 7252985, at *6 (W.D. Wash. May 7, 2015) (allegation that Adobe "used information gathered from other sources to link plaintiff's Roku device serial number and the record of what videos were watched to plaintiff's identity" failed to state a claim for disclosure of PII under the VPPA), *aff'd*, 876 F.3d 979 (9th Cir. 2017).

Notably, the courts in both *Wilson* and *Robinson* rejected the minority interpretative approach—relied upon by Plaintiffs, *see* dkt. 25 at 1—that "whether any particular set of information constitutes PII depends on the capabilities of the party or parties to which it is disclosed – that is, the scope of PII is recipient-dependent." *Wilson*, 598 F. Supp. 3d at 91. As Judge Rakoff explained, this minority approach cannot be squared with the VPPA's text. "[T]he VPPA sets out requirements regarding the handling of PII that do not implicate the disclosure of such information to a recipient . . . [and] [i]t would make little sense for the scope of PII to be recipient-dependent where the conduct at issue does not involve disclosure to a third-party." *Id.* at 91-92. "Given the principle that 'identical words and phrases within the same statute should normally be given the same meaning,' it follows that the Third Circuit's definition of PII – which does not make the scope of PII dependent on the specifics of the recipient of the disclosure, applies throughout the Act." *Id.* (quoting *United States v. Tabb*, 949 F.3d 81, 88 (2d Cir. 2020)

and citing *In re Nickelodeon*, 827 F.3d at 290); *see also Eichenberger*, 876 F.3d at 985 (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) ("'[P]ersonally identifiable information' must have the same meaning [throughout the statute] without regard to its recipient's capabilities. Holding otherwise would make '[t]he lawfulness of [a] disclosure ... depend on circumstances outside of [a video service provider's] control.'") (alteration in original).

Here, Plaintiffs at best allege that the Peacock App sent their iOS devices' IDFAs or IDFVs—i.e., "unknown user data," FAC ¶ 56—to Adobe.[4] But they do not allege that information is itself identifying, or could be used by an "ordinary person" or, indeed, anyone other than Adobe, to identify Plaintiffs. Thus, they do not allege a disclosure of PII under the majority—and correct—interpretive approach endorsed in both *Robinson* and *Wilson*.

                    **b.**      *Even if device-related information could identify individuals, Plaintiffs do not plead any identification here.*

Plaintiffs do not even allege a disclosure of PII under the minority approach used by a handful of courts in other Circuits. Judge Rakoff addressed an analogous issue in *Wilson*. In that case, the plaintiff alleged that the defendant's app disclosed her "unique user identification number" to third parties, who could then "pair" that number with "information from [her] Triller profile page" to personally identify her. *Wilson*, 598 F. Supp. at 92. Lacking, however, were allegations "as to what information was actually included on Wilson's profile nor how that information could be used by a third party to identify Wilson." *Id.* In other words, while the plaintiff alleged that a third party might hypothetically be able to identify her, she did not allege

---

[4]     As noted above, while the FAC alleges that "New Relic IDs" are disclosed to Adobe by the Peacock TV and CNBC News Apps, FAC ¶ 50, and "User IDs" are disclosed by the Peacock TV App, FAC ¶ 50, there are no allegations explaining what these data points are or whether/how they relate to the Plaintiffs, their devices, apps on their devices, or anything else. Accordingly, the allegation that they are nevertheless "PII," *id.* ¶ 5, is conclusory. It cannot support any claim for relief. *Iqbal*, 556 U.S. at 678.

facts showing that disclosure happened or was even possible.

The FAC suffers from similar flaws. Plaintiffs only allege that when the Peacock TV and CNBC News Apps are used, the Apps *may* disclose information that *may* be linked back to the App user under certain circumstances. For the Peacock TV and CNBC News Apps, for example, *if* an iOS user affirmatively opts into ad tracking (which is, again, an option only chosen by 21% of all users, and was only intermittently chosen by Plaintiff Afriyie), then a IDFA is allegedly disclosed to Adobe. *If* such a user has an existent Adobe ID (i.e., rather than having one newly assigned to them), then Adobe can *potentially* match the disclosed IDFA (or any other transmitted device-related data points) to that user's Adobe ID. Thus, even accepting Plaintiffs' allegations as true and when using the minority (and widely rejected) interpretative approach for PII, it is *impossible* to determine whether *Plaintiffs'* use of the Peacock TV and CNBC News Apps resulted in any disclosures at all—much less "identifying" ones.

Moreover—and unlike the plaintiff in the *Yershov* decision that Plaintiffs attempt to weaponize here—even if IDFAs or other device-related data was disclosed, Plaintiffs do not allege Adobe was able to link that data to existing Adobe profiles that identified them by name, or even that they had an existing Adobe profile as opposed to being assigned a brand new Adobe ID corresponding to any disclosed *device*-related data. *Contra Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016) (plaintiffs alleged that Adobe maintained an "individualized profile" about him). In sum, "the complaint lacks any allegation that would allow the Court to infer a 'firm and readily foreseeable' connection between the information disclosed and [either Plaintiffs'] identity, thus failing to state a claim under the VPPA even assuming the broader approach set out in *Yershov*." *Wilson*, 598 F. Supp. 3d at 92; *see also Eddystone Rail Co. v. Bank of Am., N.A.*, No. 19 CIV. 9584 (GBD), 2023 WL 2507059, at *4 (S.D.N.Y. Mar. 13,

2023) ("Plaintiff still must provide well-pleaded facts that allow the court to infer that

entitlement to relief is plausible and not merely possible.") (citing *Iqbal*, 556 U.S. at 678–79),

*appeal filed*, No. 23-561 (2d Cir. Apr. 12, 2023).

> c.    *Plaintiffs do not plead that Defendants had any way of knowing whether the Adobe SDK would transmit identifying information about the Plaintiffs.*

Finally, even assuming that the information allegedly disclosed was PII (it is not), and

that the FAC pleaded facts showing Plaintiffs were actually identified in some capacity (it does

not), the FAC does not allege that Defendants *knowingly* disclosed any PII to Adobe.

Only "knowing" disclosures of PII violate the VPPA or VCPA. 18 U.S.C. § 2710(b)(1);

N.Y. Gen. Bus. Law § 673(1). To plead a "knowing" violation, a plaintiff must allege facts

showing "that the video-service provider actually knew that it was disclosing: (1) a user's

identity; (2) the identity of the video material; and (3) the connection between the two—i.e., that

the given user had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86

F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (emphasis added). A plaintiff cannot rely on

conclusions or sprinkle in the word "knowing" here and there; she must "allege *facts* giving rise

to a reasonable inference that [the defendant] knowingly or willfully disclosed PII to someone

other than the consumer." *Mollett v. Netflix, Inc.*, No. 5:11-CV-01629-EJD, 2012 WL 3731542,

at *4 (N.D. Cal. Aug. 17, 2012) (emphasis added), *aff'd*, 795 F.3d 1062 (9th Cir. 2015).

Plaintiffs do not allege facts to support a knowing disclosure. As *In re Hulu* explained,

"the term 'knowingly' connotes actual knowledge. It is not enough . . . that a disclosure be

merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or she is

doing . . . and not act[ing] because of some mistake or accident." 86 F. Supp. 3d at 1095. Rather,

"'knowingly' means consciousness of transmitting the private information. It does not merely

mean transmitting the code." *Id.* Here, Plaintiffs allege numerous criteria—all outside of

Defendants' control and knowledge—that must be met before device-related information is disclosed, or any disclosed identifiers are associated with Plaintiffs. For example, Plaintiffs allege that whether the SDK would cause any IDFA transmissions depends on whether users chose to allow ad tracking, which is something Defendants cannot know. Similarly, Plaintiffs allege that for Adobe to be able to identify a person, that person's device data must be associated with a known Adobe ID that is also associated with an individual (rather than another device), another thing that Defendants would not know. Nor do Defendants have any way of knowing *who* is using a specific device at the time a transmission is made. To use the example above, it could be dad, mom, or either of their two kids watching "The Office" reruns on the family iPad. Here, both Plaintiffs allege they are the only person that used their iPhone, FAC ¶¶ 15, 18, but do not allege how *Defendants* could have known that was the case. And finally, the FAC does not allege how or whether Adobe could link (much less how Defendants *knew* that Adobe could link) any transmitted "Video Titles" or "Video IDs" to any content that either Afriyie or Campbell watched. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1096 (discussing the "connection" between identifying information and video materials as a required "third element" for any VPPA disclosure).

### 2.    Plaintiffs do not allege a "consumer" relationship with respect to the CNBC News, NBC News, or NBC Sports Apps

Plaintiffs additionally do not allege they are statutory "consumers" with respect to the majority of the NBCU Apps discussed in the FAC.

The VPPA and VCPA are limited in scope. By their terms, the Acts only provides a right of action to "consumers." 18 U.S.C. § 2710(b); N.Y. Gen. Bus. Law § 673. The Acts each define "consumer" as "any renter, purchaser, or subscriber of goods or services" from a covered entity. 18 U.S.C. § 2710(a)(1); N.Y. Gen. Bus. Law § 672(1). Neither Act defines the term "subscriber."

*Golden*, 2023 WL 5434378, at \*9. Consistent with the plain meaning of the term, courts "have agreed that to be a 'subscriber' under the VPPA requires an 'ongoing commitment or relationship between the user and the entity which owns and operates the [website or] app.'" *Id.* (quoting *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017) and citing collected cases).

Critically, "the courts to consider the question have further, overwhelmingly, held that, to qualify as a subscriber under the VPPA, a plaintiff must allege more than . . . having . . . merely downloaded a free mobile app[.]" *Golden*, 2023 WL 5434378, at \*10 (citing *Perry*, 854 F.3d at 1341–43); *Ellis*, 803 F.3d at 1257–58 (same); *Salazar v. Nat'l Basketball Ass'n*, No. 1:22-cv-07935 (JLR), 2023 WL 5016968, at \*2–3, \*10 n.4 (S.D.N.Y. Aug. 7, 2023) (same)). As the Eleventh Circuit explained, free app users do not evidence any real commitment to an app provider, given that they are "free to delete the app without consequences whenever [they] like[], and never access its content again." *Perry*, 854 F.3d at 1342.

Here, Plaintiffs fail to allege any "commitment" to the NBC News, NBC Sports, or (in the case of Campbell) the CNBC News Apps. The FAC does not even allege that the Plaintiffs downloaded or used these Apps and, thus, they have no relationship with them. And even if they *had* downloaded them—as Plaintiffs posit other putative class members did—*Golden* and other cases explain that casual users of a free app (i.e., who access video content equally available to every other person on the internet) are not VPPA "consumers." *Golden*, 2023 WL 5434378, at \*10 (citing  *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015)); *see also Lamb v. Forbes Media LLC,* No. 22-CV-06319-ALC, 2023 WL 6318033, at \*12 (S.D.N.Y. Sept. 28, 2023) (following *Golden*'s analysis). "[D]ownloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' [or

consumer] under the VPPA." *Ellis*, 803 F.3d at 1257.

### 3. Defendants do not "rent" or "sell" prerecorded video content and, thus, are not subject to the Video Consumer Protection Act

Finally, the FAC does not allege facts demonstrating that Defendants are subject to the VCPA at all. While the VPPA and VCPA address similar conduct, they regulate different entities. The federal statue addresses a single category of regulated businesses—"video tape service providers"—defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Recent decisions have noted that these three lines of business (i.e., rental, sale, or delivery) correspond to three different business practices—rentals, sales, or subscriptions— addressed in by the VPPA. *Carter*, 2023 WL 3061858, at *6. But while the VCPA is modeled after the VPPA, the New York law is narrower and only applies to entities engaged in two kinds of business: video rentals and video sales. N.Y. Gen. Bus. Law § 672(4, 5). The VCPA then includes different statutory sections regulating disclosures made by video *rental* companies (§ 673) and for ones engaged in *sales* (§ 674). The VCPA, however, includes no provision addressing businesses involved exclusively in the "delivery" of video materials to subscribers.

Here, the Plaintiffs do not allege that Defendants "rent" or "sell" any video materials. Accordingly, they are neither "video tape service providers" nor "video tape sellers" under the VCPA and, in turn, cannot be liable under Sections 673 or 674 of the Act.

### B. Plaintiffs' GBL § 349 Claim Fails

Plaintiffs' GBL § 349 claim fails as well.  GBL § 349 "makes it unlawful to engage in '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in furnishing of any service' in New York." *Morales v. Apple, Inc.*, No. 22-CV-10872 (JSR), 2023 WL 5579929, at *2 (S.D.N.Y. Aug. 29, 2023). To state a claim, a plaintiff "must allege that a

defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). Defendants previously noted that Plaintiffs' GBL § 349 lacked factual support. The FAC does not cure this basic defect; instead, it gives rise to other dispositive flaws.[5]

### 1.    The FAC alleges neither alleges an injury or materiality.

At the outset, Plaintiffs don't allege facts supporting their conclusory allegations that they would not have paid or would have paid less for their Peacock TV App or CNBC Pro TV subscriptions had they known about Defendants' data practices. To the contrary, both Plaintiffs allege that they *still* pay for their subscriptions despite discovering the alleged conduct at issue here. FAC ¶¶ 13, 18. *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 74 (S.D.N.Y. 2013) (citation omitted) ("In a GBL § 349 claim the voluntary payment doctrine 'bars recovery of payments voluntarily made with full knowledge of the facts.'"). Accordingly, Plaintiffs own allegations show that the conduct alleged here was not material to them, or that they suffered any injury from it. *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (dismissing GBL § 349 claim where plaintiff failed to plead facts supporting materiality or causation).

---

[5]    Plaintiffs' GBL § 349 claim also fails because the FAC does not allege facts showing that any alleged deceptions occurred in New York. "[T]o qualify as a prohibited act under the [GBL § 349], the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002). Defendants' contractual choice of law provisions, which select New York law, do not satisfy this requirement. *Greene v. Clean Rite Ctrs., LLC*, No. 22-CV-1750 (PKC) (RML), 2024 WL 328436, at *9 (E.D.N.Y. Jan. 29, 2024). Nor do allegations about any party's residency or the fact that Defendants generally conduct business in the state. *Goshen*, 98 N.Y.2d at 325 ("[O]ur General Business Law analysis does not turn on the residency of the parties. . . . [and] was not intended to police the out-of-state transactions of New York companies[.]"). Absent any allegation that Plaintiffs were deceived in New York, they lack statutory standing for their GBL § 349 claim.

### 2.    The FAC identifies no misrepresentations.

Plaintiffs additionally fail to identify any purported misrepresentations made by Defendants. At its most basic, a GBL § 349 claim must first *identify* a deceptive statement, and *then* allege that a plaintiff saw and acted on it. *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 n.10 (S.D.N.Y. 2016) (quoting *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010)) ("Although the CAC repeatedly references 'advertising' and 'misrepresentations,' it fails to describe them, and therefore does not plausibly plead any misleading statements sufficient to survive a motion to dismiss."). A GBL § 349 claim also "require[s] that a plaintiff plead causation." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 n.7 (S.D.N.Y. 2020) (citing *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015)).

Plaintiffs' GBL § 349 claim fails these basic requirements. Here, Plaintiffs broadly allege that Defendants made "deceptive representations" and contend that they "relied on [them] when they subscribed for NBC's products and services." FAC ¶ 153. That allegation is conclusory:  the FAC neither identifies *any* representation that Defendants made (much less a "deceptive" one), nor alleges that Plaintiffs saw or relied on any. In other words, Plaintiffs "never identif[y] the specific advertisements or statements at issue," *Dixon v. Ford Motor Co.*, No. 14–CV–6135 (JMA)(ARL), 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015), or that they saw them, *Lugones*, 440 F. Supp. 3d at 240. Accordingly, their  GBL § 349 claim "must be dismissed." *Morales*, 2023 WL 5579929, at *3.

### 3.    The FAC identifies no actionable omissions.

Finally, Plaintiffs also do not allege a plausible omission claim. To state a GBL § 349 omission claim, "it is not sufficient for a plaintiff to point solely to the [alleged] omission." *Dimond v. Darden Rests., Inc.*, No. 13 CIV. 5244 KPF, 2014 WL 3377105, at *13 (S.D.N.Y.

July 9, 2014); *Pelman v. McDonald's Corp.,* 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) ("[B]ecause this is a purportedly deceptive act based on an omission, it is not sufficient for the plaintiffs to point to the omission alone."). Rather, "the plaintiff must show why the omission was deceptive by alleging that the information omitted was solely within the defendant's 'possession or that a consumer could not reasonably obtain such information.'" *Dimond*, 2014 WL 3377105, at *13; *accord Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022) ("[A] plaintiff claiming an omission constitutes actionable deception must show either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information.").

 Plaintiffs' GBL § 349 omission claim is self-defeating. Rather than demonstrate that any of Defendants' alleged data practices were "secret," the FAC describes them by citing to numerous public documents. Chief among these citations is the NBCU Privacy Policy, which discloses *all* of the alleged conduct at issue here. As discussed *supra*, § II.C, that document explains (i) the information that the NBCU Apps collect (including device identifiers and the content users view), (ii) to whom that information is disclosed (including to advertisers, analytics companies, and other third parties), (iii) the purposes for those disclosures (including for analytics and targeted advertising), and (iv) how the collected and disclosed information is used, including to identify users across devices. Plaintiffs do not allege that they "could not reasonably obtain [this] information." *Kyszenia*, 583 F. Supp. 3d at 360. Nor could they:  the information— and where to find it—is prolifically cited throughout the FAC.

 Rather than explain what was omitted from any of these public documents, the FAC alleges that Plaintiffs' GBL § 349 omission theory is tethered to Defendants' alleged failure to comply with the VPPA's and VCPA's statutory *consent* requirements. FAC ¶ 149 (citing 18

U.S.C. § 2710(b)(2)(B) and N.Y. Gen. Bus. Law § 672(6)). But even if the VPPA or VCPA applied here (they do not), neither statute "on its face . . . address[es] deceptive or misleading behavior at all." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005). Accordingly, neither the VPPA nor the VCPA—nor either statute's specific consent requirements—can serve as a basis for a GBL § 349 claim. *Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *5 (S.D.N.Y. Mar. 1, 2022) ("To state a GBL claim, the challenged act must be 'inherently deceptive[.]'").

Plaintiffs' conclusory remark that Defendants "fail[ed] to disclose [their] practice of sharing Plaintiffs' . . . PII and video viewing histories to third parties, revealing the identity of individuals who watched specific videos" solves nothing. FAC ¶ 149. As discussed *supra*, the premise of the allegation is not plausibly alleged for numerous reasons, including because the FAC only alleges that Defendants disclosed Plaintiffs' device-related information (i.e., not "PII") and the FAC does not plausibly allege that Adobe *personally* identified either Plaintiff (as opposed to merely associating an Adobe ID with disclosed device-related data). And in any event, *all* of Defendants' data practices are specifically disclosed in NBCU's Privacy Policy. The "omission" claim fails as a result.

### C.    Plaintiffs' Unjust Enrichment Claim Fails

Finally, Plaintiffs' unjust enrichment is still based on the allegation that Defendants "wrongfully disclosed" Plaintiffs' "PII and video viewing history" to third parties and were enriched at Plaintiffs' expense. FAC ¶ 159. As several other courts have held in recent VPPA cases, the claim is duplicative of Plaintiffs' other claims and should be dismissed.

Unjust enrichment "is available as a cause of action 'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances

create an equitable obligation running from the defendant to the plaintiff.'" *Goldemberg v. Johnson & Johnson Consumer Cos.,* 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (quoting *Corsello*, 18 N.Y.3d at 790). It "is not a catchall cause of action to be used when others fail .... An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) ("Plaintiffs' unjust enrichment claims are easily dismissed, as the claims rest on the same factual allegations as their contract claims.").

Here, the FAC alleges no additional facts in support of Plaintiffs' claim for unjust enrichment. Rather, it turns on the same allegedly tortious conduct—i.e., Defendants' purported collection and disclosure of "PII and viewing history"—that Plaintiffs say violates the VPPA, VCPA, or GBL § 349. Thus, and as Judge Englemayer explained in *Golden*, "to the extent that the [Plaintiffs' other claims] succeed, the unjust enrichment claim is duplicative and if the [other claims are] defective, an unjust enrichment claim cannot remedy the defects." 2023 WL 5434378, at *13 (cleaned up); *accord Gardener v. MeTV*, No. 22 CV 5963, 2023 WL 4365901, at *5 (N.D. Ill. July 6, 2023) ("Plaintiffs' unjust enrichment claim is dependent on its VPPA claim, so the Court similarly dismisses it . . . .").

## V.    CONCLUSION

Plaintiffs seek to capitalize on the recent wave of VPPA litigation but rely on theories of liability that have been rejected for years. They do not and cannot state a claim. Accordingly, the FAC should be dismissed with prejudice.

Dated: March 8, 2024                    Respectfully submitted,

By: /s/ Jeffrey Landis
      Jeffrey Landis
      ZWILLGEN PLLC
      1900 M Street NW, Suite 250
      Washington, DC 20036
      Telephone: (202) 296-3585
      Facsimile: (202) 706-5298
      Email: jeff@zwillgen.com

      Benjamin S. Thomassen*
      ZWILLGEN PLLC
      One North LaSalle St. Suite 4600
      Chicago, IL 60602
      Main: (312) 685-2278
      Email: ben.thomassen@zwillgen.com

      *Pro hac vice application forthcoming*

      *Counsel for Defendants*
      *NBCUniversal Media, LLC and Peacock TV LLC*