# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AMMA AFRIYIE and ROY CAMPBELL, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>NBCUNIVERSAL MEDIA, LLC and PEACOCK TV, LLC,<br><br>    Defendants. | Case No. 1:23-cv-09433-VSB<br><br>Hon. Vernon S. Broderick |

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

---

**TABLE OF CONTENTS**

                                                                                    **Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 3

        A.      The VPPA and VCPA Were Enacted to Protect Plaintiffs' Video Viewing Data.. 3

        B.      The NBC Apps Disclosed Plaintiffs' Identifiable Video Viewing Data ............... 4

        C.      Plaintiffs Were Harmed by NBC's Misconduct ................................... 6

III.    ARGUMENT ............................................................................................ 6

        A.      Plaintiffs State a Claim Under the VPPA and VCPA ............................ 6

                1.      Defendants Disclosed Identifiable Video Viewing History...................... 7

                2.      Defendants Knew the Information Transmitted From the NBC Apps
                        Could be Used by Third Parties to Identify Plaintiffs............................. 12

                3.      Plaintiffs are "subscribers" of the NBC Apps under the VPPA and
                        VCPA ......................................................................................... 14

                4.      The NBCU Privacy Policy Does Not Satisfy VPPA or VCPA
                        Disclosure Requirements ............................................................. 17

                5.      Defendants are "video tape service providers" and are subject to the
                        VCPA ......................................................................................... 18

        B.      Plaintiffs State a Claim Under GBL § 349 ........................................ 19

                1.      Plaintiffs Adequately Plead NBC's Deceptive Conduct.......................... 20

                2.      Plaintiffs Adequately Plead Materiality and Injury ................................. 22

        C.      Plaintiffs Adequately Allege Unjust Enrichment ................................ 24

IV.     CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldana v. GameStop, Inc.*,
  No. 22-cv-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .............................. 10, 12, 13

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
  No. 14-cv-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) ................................... 24

*Belozerov v. Gannett Co.*,
  646 F. Supp. 3d 310 (D. Mass. 2022) ................................................................. 9, 13

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) .......................................................................... 16

*Carovillano v. Sirius XM Radio Inc.*,
  No. 23 Civ. 4723 (PAE), 2024 WL 450040 (S.D.N.Y. Feb. 6, 2024) ................................... 23

*Carter v. Scripps Networks, LLC*,
  670 F. Supp. 3d 90 (S.D.N.Y. 2023) ............................................................................ 19

*Collins v. Pearson Educ., Inc.*,
  No. 23 Civ. 2219 (PAE), 2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) ................................... 10

*Cummings v. FCA US LLC*,
  401 F. Supp. 3d 288 (N.D.N.Y. 2019) ......................................................................... 20

*Czarnionka v. Epoch Times Ass'n, Inc.*,
  No. 22 Civ. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ............................... 9

*de Lacour v. Colgate-Palmolive Co.*,
  338 F.R.D. 324 (S.D.N.Y. 2021) ................................................................................. 16

*Diaz v. Paragon Motors of Woodside, Inc.*,
  424 F. Supp. 2d 519 (E.D.N.Y. 2006) ........................................................................... 21

*DiMuro v. Clinique Lab'ys, LLC*,
  572 F. App'x 27 (2d Cir. 2014) ............................................................................ 15, 16

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .............................................................................. 10, 11

*Ellis v. Cartoon Network, Inc.*,
  803 F.3d 1251 (11th Cir. 2015) .................................................................................. 14

*Farina v. Metro. Transp. Auth.*,
    409 F. Supp. 3d 173 (S.D.N.Y. 2019) ............................................................... 19

*Feldman v. Star Trib. Media Co. LLC*,
    659 F. Supp. 3d 1006 (D. Minn. 2023) ............................................................. 9, 13

*Fishon v. Peloton Interactive, Inc.*,
    620 F. Supp. 3d 80 (S.D.N.Y. 2022) ................................................................. 22, 23

*Georgia Malone & Co., Inc. v. Reider*,
    19 N.Y.3d 511 (2012) ........................................................................................ 24

*Golden v. NBCUniversal Media, LLC*,
    No. 22 Civ. 9858 (PAE), 2023 WL 5434378 (S.D.N.Y. Aug. 23, 2023) ................ 3, 14, 15, 18

*Ham v. Lenovo (United States) Inc.*,
    664 F. Supp. 3d 562 (S.D.N.Y. 2023) ............................................................... 16

*Harris v. Pub. Broad. Serv.*,
    662 F. Supp. 3d 1327 (N.D. Ga. 2023) .............................................................. 14

*Hart v. BHH, LLC*,
    No. 15-cv-4804, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) ............................... 15

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
    37 N.Y.3d 169 (2021) ........................................................................................ 21

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................... 18, 19

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ...................... 15

*In re Hulu Priv. Litig.*,
    No. C 11-03764-LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ...................... 9, 12, 18

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ............................................................... 12, 14

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ............................................................................... 10, 11

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) .............................................................. 18

*Jackson v. Fandom, Inc.*,
    No. 22-cv-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) ................... 15, 18

iii

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
   16 F.4th 47 (2d Cir. 2021) ................................................................................. 12

*Kandel v. Dr. Dennis Gross Skincare, LLC*,
   No. 23-cv-01967 (ER), 2024 WL 965621 (S.D.N.Y. Mar. 5, 2024) ....................... 16

*Kane v. Univ. of Rochester*,
   No. 23-cv-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .................... 20

*Krobath v. S. Nassau Communities Hosp.*,
   178 A.D. 3d 807 (2d Dep't 2019) ........................................................................ 19

*Lebakken v. WebMD, LLC*,
   640 F. Supp. 3d 1335 (N.D. Ga. 2022) ................................................................ 14

*Moses v. Apple Hosp. REIT Inc.*,
   No. 14-cv-3131-DLI-SMG, 2016 WL 8711089 (E.D.N.Y. Sept. 30, 2016) ............ 15

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
   537 F.3d 168 (2d Cir. 2008) ............................................................................... 25

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ............................................................................... 23

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) .......................................................................................... 22

*Rancourt v. Meredith Corp.*,
   No. 22-cv-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024)......................... 4

*Rivera v. S.C. Johnson & Son, Inc.*,
   No. 20-cv-3588 (RA), 2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021)  ................... 16

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015).................................................... 7, 9, 11, 12

*Rodriguez v. Hanesbrands Inc.*,
   No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018)...... 23

*Saunders v. Hearst Television, Inc.*,
   No. 23-cv-10998-RGS, 2024 WL 126186 (D. Mass. Jan. 11, 2024)....................... 15

*Schneider v. Colgate-Palmolive Co.*,
   No. 5:22-cv-1294, 2023 WL 4009099 (N.D.N.Y. June 15, 2023).......................... 25

iv

*St. John's Univ., New York v. Bolton*,
   757 F. Supp. 2d 144 (E.D.N.Y. 2010)..................................................................... 25

*Stanley v. Direct Energy Servs., LLC*,
   466 F. Supp. 3d 415 (S.D.N.Y. 2020) ..................................................................... 15

*Tomassini v. FCA US LLC*,
   No. 3:14-cv-1226-MAD-DEP, 2016 WL 11707888 (N.D.N.Y. Nov. 23, 2016).................... 22

*Vaccariello v. XM Satellite Radio, Inc.*,
   295 F.R.D. 62 (S.D.N.Y. 2013)............................................................................. 23

*Warner v. StarKist Co.*,
   No. 18-cv-406-GLS-ATB, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ...................... 22, 24

*Wilson v. Triller, Inc.*,
   598 F. Supp. 3d 82 (S.D.N.Y. 2022) .......................................................................... 9

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ....................................................................... *passim*

**Statutes**

15 U.S.C.A. § 6501(8) ............................................................................................ 8

18 U.S.C. § 2710 ...................................................................................... 1, 6, 18

18 U.S.C. § 2710(a)(1) .......................................................................................... 14

18 U.S.C. § 2710(a)(3) ............................................................................................ 6

18 U.S.C. § 2710(b)(1) .......................................................................................... 12

18 U.S.C. § 2710(b)(2)(B) ...................................................................................... 17

Cal. Civ. Code § 1798.140(v)(1) ............................................................................... 8

N.Y. Gen. Bus. Law  § 349 ........................................................................ *passim*

N.Y. Gen. Bus. Law  § 671 ...................................................................................... 3

N.Y. Gen. Bus. Law  § 672(1) .......................................................................... 14, 19

N.Y. Gen. Bus. Law  § 672(2) ................................................................................ 17

N.Y. Gen. Bus. Law  § 672(3) .................................................................................. 6

N.Y. Gen. Bus. Law  § 672(4) ............................................................................................... 18

N.Y. Gen. Bus. Law  § 672(6) ............................................................................................... 17

N.Y. Gen. Bus. Law  § 673 ..................................................................................................... 6

N.Y. Gen. Bus. Law § 673(1) ............................................................................................... 12

**Rules**

Fed R. Civ. P. 8(d)(2).............................................................................................................. 25

Fed R. Civ. P. 8(d)(3).............................................................................................................. 25

**Regulations**

16 C.F.R. § 312.2 ...................................................................................................................... 8

**Other Authorities**

S. REP. No. 100-599 (1988) ................................................................................................. 3, 5

Plaintiffs Amma Afriyie and Roy Campbell ("Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendants' NBCUniversal Media, LLC ("NBCU") and Peacock TV, LLC ("Peacock TV") (together with NBCUniversal, "NBC" or "Defendants") Motion to Dismiss (ECF No. 31) ("Mem.").

## I.    INTRODUCTION

Unbeknownst to Plaintiffs and subscribers, Defendants intentionally designed the Peacock TV App, the CNBC: Business & Stock News App ("the CNBC News App"), the NBC News App, and the NBC Sports App (collectively, "NBC Apps") to collect and transmit subscribers' video viewing history and personally identifiable information ("PII") to third parties. Defendants did so purposefully (and inconspicuously) by incorporating software development kits ("SDKs")—*i.e.*, fragments of computer code developed by third parties, including Adobe and mParticle—into the NBC Apps, which automatically transmit subscribers' video viewing history and PII to third parties. This conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* (the "VPPA") and the New York Video Consumer Protection Act (the "VCPA") because Defendants failed to obtain the required consent from Plaintiffs and subscribers to transmit their video viewing history to these third parties. Defendants ignore these facts and, instead, raise four unavailing arguments in an attempt to dismiss the VPPA and VCPA claims in Plaintiffs' First Amended Class Action Complaint (ECF No. 24) ("FAC").

*First*, Defendants argue that the surreptitiously transmitted information is not personally identifiable as required by the statutes. But this argument turns on an overly narrow interpretation of the law and misrepresentation of the facts alleged here. The FAC clearly alleges that Defendants transmitted video viewing history with identifiers, including individual Adobe IDs, whose specific purpose was, and is, to personally identify individual NBC App subscribers, including to Adobe

and other third parties, so specific individuals could be directly targeted with ads based on the specific videos they viewed. This plainly qualifies as "personally identifiable information" (or "PII") under either statute.

*Second*, Defendants argue that they are not responsible for violating Plaintiffs' privacy because they claim they had no way of knowing whether the SDKs that they affirmatively incorporated into the NBC Apps would transmit identifying information about Plaintiffs. This is nonsensical. NBC, as the creator and developer of the NBC Apps, is the only entity that can (and did) incorporate these SDKs into the NBC Apps. And, further, NBC is the only entity who could have configured the NBC Apps to transmit users' identifying information. Indeed, the very documentation NBC would have reviewed to incorporate these SDKs in the first instance spell out exactly what information will be automatically collected and transmitted as a result of doing so. To conveniently claim, now, they were ignorant of the consequences of their own intentional conduct does not excuse NBC's violations of the VCPA and the VPPA.

*Third*, while Defendants concede that Plaintiffs have a consumer relationship under the VPPA and the VCPA based on their subscriptions to the Peacock TV App and CNBC News App, Defendants argue that Plaintiffs may not assert claims relating to the NBC Apps they did not use. This is a premature class certification argument that is also wrong. Plaintiffs may assert claims on behalf of users of the NBC Sports and NBC News Apps, as they are similar apps owned and operated by Defendants that disclosed Plaintiffs' personally identifiable video viewing history in a common manner.

*Fourth*, Defendants miraculously claim that—despite being actively engaged in the delivery of prerecorded video through the NBC Apps (FAC ¶¶ 27, 31, 35, 39, 125)—they do not qualify as video service providers and thus are exempt from liability.  This argument, which

ignores the law and facts alleged, has been consistently rejected; indeed, just last year Defendant NBCU was found to be a video service provider under the VPPA in *Golden v. NBCUniversal Media, LLC*, No. 22 Civ. 9858 (PAE), 2023 WL 5434378, at *5 (S.D.N.Y. Aug. 23, 2023).

Defendants also argue that the FAC does not establish claims arising under New York General Business Law ("GBL") § 349 or unjust enrichment, claiming that Plaintiffs have not alleged deceptive conduct, materiality, or injury under GBL § 349, and that Plaintiffs' unjust enrichment claim is duplicative. These arguments also fail. Plaintiffs have adequately alleged that Defendants' materially deceptive omissions injured Plaintiffs, and Plaintiffs' unjust enrichment claim is not duplicative because it alleges damages that are distinct from their other claims.

Accordingly, NBC's Motion to Dismiss should be denied.

## II.    FACTUAL BACKGROUND

### A.    The VPPA and VCPA Were Enacted to Protect Plaintiffs' Video Viewing Data

While this case deals with new technologies, the fundamental privacy violation at issue is nothing new. Congress enacted the VPPA more than 35 years ago after newspapers published Supreme Court nominee Judge Robert Bork's video rental history. S. REP. No. 100-599 (1988). At the time, this sparked national outrage given the inherently personal and private nature of information conveyed by one's viewing preferences. *See id.* at 6. As Senators Paul Simon and Patrick Leahy aptly put it, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." *Id.* at 7. The New York State legislature, acting on similar concerns, later passed the VCPA to "protect the personal privacy of individuals and their families who rent video cassette tapes and movies and similar audio-visual materials[.]" GBL § 671.

3

Viewed against this backdrop, NBC's misconduct of disclosing Plaintiffs' video viewing history to third parties, falls squarely within both statutes' purview.

**B.      The NBC Apps Disclosed Plaintiffs' Identifiable Video Viewing Data**

NBC owns and operates the NBC Apps, which provide prerecorded video streaming content. FAC ¶ 2. Millions of U.S. consumers—including Plaintiffs—subscribe to the NBC Apps to watch these videos. *Id.*

The NBC Apps incorporate several SDKs that are specifically designed to collect "app event," data—i.e., data reflecting the actions its users take within each app. *Id.* ¶¶ 3-5, 45 n. 13, 46. This includes events that track the precise videos viewed by NBC App users. *Id.* Specifically, each of the NBC Apps transmitted the Video Title or Video ID[1] for each video its subscribers viewed during the relevant period to third party advertising partners. This data was not anonymized or deidentified in any way to protect users' privacy. Just the opposite: Defendants intentionally configured these SDKs so that they transmit subscribers' private video viewing history to Adobe and/or mParticle with multiple unique identifiers intended to identify that specific person, including their Adobe ID, IDFA or IDFV (for iOS devices) or AAID (for Android devices), User ID, email address, mParticle ID, New Relic ID and/or GPS location. *Id.* ¶¶ 49-51 (listing identifiers sent to Adobe); ¶¶ 70-72 (listing identifiers sent to mParticle).

NBC knew this PII would identify individual NBC subscribers to Adobe and other advertisers.  Indeed, the main selling point of Adobe's "Experience Cloud Platform" is the ability to leverage *profiles* Adobe maintains on each individual (*id.* ¶ 53-54) to allow advertisers to target

---

[1] Video Titles are the descriptive title of a video watched. Video IDs are identifiers that allow someone to uniquely identify a specific video, i.e., a numeric identifier, a full URL, or other identifier. FAC ¶ 5 n.2. In *Rancourt v. Meredith Corp.,* No. 22-cv-10696-ADB, 2024 WL 381344, at *15 (D. Mass. Feb. 1, 2024) the court held that Video IDs constitute specific video materials for purposes of the VPPA. Here, however, because Plaintiffs allege that the apps they used transmitted Video Titles (FAC ¶ 50 (Peacock App on iOS devices transmits Video Titles and Video IDs)); ¶ 51 (CNBC News App on iOS devices transmitted Video Titles)) the Court need not determine whether Video IDs constitute specific video materials under the VPPA.

ads at *specific individuals* and provide behavioral insights about them. *Id.* ¶ 55-57, 61. This far exceeds the "sophisticated record-keeping systems" (S. REP. No. 100-599 at 7) that troubled legislators in 1988. Moreover, the Adobe ID, also known as the Adobe Experience Cloud ID or ECID, is a unique, persistent identifier that Adobe created expressly to identify and track individuals. *Id.* ¶ 62. Each of the NBC Apps transmits the Adobe ID to Adobe along with viewing history. *Id.* ¶¶ 49-51. Adobe touts that the Adobe ID "provides the foundation for customer identity" and "is used as the primary ID for devices and a base node for identity graphs." *Id*. ¶ 62. In fact, the Adobe ID is so powerful, it can even be used to identify people *who opt out of ad-tracking*, circumventing their privacy decision. *Id.* ¶ 63. The PII Defendants provided to Adobe with Plaintiffs' and class members' video viewing history, at a minimum, identified them to Adobe.

Defendants also surreptitiously transmitted PII to third party mParticle. *Id.* ¶¶ 69-79 This specifically included subscribers' AAID, User ID, email address, mParticle ID, New Relic ID or GPS location. *Id.* ¶ 69-72. The identifiers disclosed to mParticle are also used to build individual user profiles though mParticle's IDSync Platform, which is used to personalize ads and marketing to *specific individuals*. *Id.* ¶¶ 74, 75. mParticle touts that it matches *every* piece of data collected to an individual user through a three-step identification process that "looks for a matching user profile" by "comparing the identifiers included in the request with each identifier." *Id.* ¶ 78. This process is so successful that "[e]very piece of data collected is attributed to a user." *Id.* ¶ 77. By incorporating the mParticle SDK in the NBC Apps, NBC transmitted subscribers' private video viewing history and PII to mParticle. Like third party Adobe, mParticle was (and is) able to identify Plaintiffs and class members and attribute their video viewing history to their specific, individualized profile in its databases using this information. *Id.* ¶ 79.

With respect to both Adobe and mParticle, Defendants surreptitiously transmitted subscribers' PII and video viewing history for the express purpose of identifying NBC App users.

### C.    Plaintiffs Were Harmed by NBC's Misconduct

NBC transmitted each Plaintiffs' video viewing history and PII to Adobe, mParticle, and others in violation of the VPPA and VCPA. The identifiers transmitted to third parties Adobe and mParticle through each app used by each Plaintiff are reflected in the chart below:

| Plaintiff(s) | App | Identifiers Sent | Third Party | Complaint Paragraph |
|---|---|---|---|---|
| Amma Afriyie and Roy Campbell | Peacock App for iOS | Video Titles, Video Identifiers, Adobe ID, IDFA, New Relic ID, and User ID | Adobe | 50 |
| Amma Afriyie | CNBC News App for iOS | Video Titles, IDFA, IDFV, New Relic ID, and Adobe ID | Adobe | 51 |
| Amma Afriyie | CNBC News App for iOS | Video Titles and Video Identifiers, New Relic ID | mParticle | 72 |

As described above, the identifiers at issue here are unique to each Plaintiff and could not be attributable to another person. Indeed, Plaintiffs were the only individuals with access to the devices on which they accessed the NBC Apps during the relevant period. Thus, the identifier can only be associated with each Plaintiff. *Id.* ¶¶ 15, 18.

## III.    ARGUMENT

### A.    Plaintiffs State a Claim Under the VPPA and VCPA

The VPPA and VCPA prohibit "video tape service providers" from knowingly disclosing "personally identifiable information" concerning any "consumer" to a third-party without the "informed, written consent" of the consumer. 18 U.S.C. § 2710; GBL § 673. As defined in 18 U.S.C. § 2710(a)(3) and GBL § 672(3) "personally identifiable information" includes "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]"

Plaintiffs plausibly allege facts supporting each of these elements. Plaintiffs are "consumers" who subscribed the NBC Apps, and used those apps to view prerecorded video content. FAC ¶¶ 13-15, 18. Defendants, as the developers of those apps and the providers of this prerecorded video content are video tape service providers whose conduct is covered by the VPPA and VCPA. *Id.* ¶¶ 1, 2, 27-42. Defendants, accordingly, violated both statutes when they knowingly transmitted this information through SDKs they intentionally incorporated into the NBC Apps. *Id.* ¶¶ 3, 44-47, 79. As a result, event data reflecting the specific prerecorded videos Plaintiffs viewed (*id.* ¶¶ 4, 5, 48-51, 69-72) as well as PII, including several unique identifiers (*id.* ¶¶ 5, 49-52, 70-73), that identified Plaintiffs to at least Adobe and mParticle, were surreptitiously transmitted to third parties without Plaintiffs' consent. *Id.* ¶¶ 6-8, 52-68,73-79.

Defendants challenge these claims on four grounds. Each of these arguments are addressed in turn and fail for the reasons stated below.

### 1.    Defendants Disclosed Identifiable Video Viewing History

Defendants argue that the information the NBC Apps transmitted is not personally identifiable because the identifiers they included with Plaintiffs' video viewing history identify devices and not people (Mem. at 11-15). Putting aside the improper fact-based nature of this argument on a Rule 12 motion, this challenge ignores the FAC's highly specific allegations regarding personally identifiable nature of the PII Defendants included with Plaintiffs' video viewing history, including how the Adobe ID, which was transmitted by each of the NBC Apps to Adobe, directly identifies individuals to third party Adobe.[2] *See* Section II(B)-(C) (describing identifiers sent to Adobe). Likewise, the identifiers Defendants transmitted to mParticle

---

[2] The transmission of the Adobe ID is stronger even than the data disclosed in *Yershov* (discussed *infra*), and is plainly "information which itself identifies a particular person as having accessed specific video materials." *Robinson v. Disney Online,* 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015)

specifically identify individuals linked that user profile. *Id.* (describing identifiers sent to mParticle). Thus, in each instance where Plaintiffs viewed a video, Defendants sent to Adobe, mParticle, or both, the equivalent of a "code name" that identified that specific Plaintiff to that third party. And this is before even taking into consideration other widely recognized sources of PII, like the IDFA, IDFV, AAID, email addresses or geo-location data.[3]

Regardless, Defendants' argument is further discredited by the specific allegations here that both Plaintiff Afriyie and Plaintiff Campbell were the *only* people with access to their devices. FAC ¶¶ 15, 18. Because no one else had access to their devices, any identifiers Defendants transmitted from Plaintiffs' devices were *de facto* personal identifiers.[4] Their motion to dismiss Plaintiffs' claims on these grounds must be denied.

Defendants' related claim that, even if factually linked to an individual, the information they shared with third parties is not "identifiable" as a matter of law is equally meritless. Information is personally identifiable under the VPPA where it is "reasonably and foreseeably likely to reveal" the videos a person has viewed. *Yershov v. Gannett Satellite Info. Network, Inc.,* 820 F.3d 482, 486 (1st Cir. 2016). *Yershov* concerned allegations by a news app subscriber that the defendant disclosed his video viewing history, GPS coordinates, and Android ID to third party Adobe—one of the same third parties to whom Defendants disclosed information in this action.

---

[3] *See* Cal. Civ. Code § 1798.140(v)(1) (defining personal information to include, *inter alia,* email addresses, unique personal identifiers, and geolocation data); 15 U.S.C.A. § 6501(8) (defining personal information to include email and personal identifiers); 16 C.F.R. § 312.2 (defining COPPA personal identifiers to include "online contact information" and persistent identifiers); U.S. Department of Labor, *Guidance on the Protection of Personal Identifiable Information*, https://www.dol.gov/general/ppii (last visited Apr. 12, 2024) (defining PII to include "identifying number or code" and "information permitting the physical or online contacting of a specific individual"); EU General Data Protection Regulation ("GDPR"), Art. 4(1) (defining personal information as "identifier such as a name, an identification number, location data, an online identifier or to one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that natural person").

[4] Indeed, this highlights the flaw in Defendants' argument that they have no way of knowing if it was "dad, mom, or either of their two kids watching 'The Office' reruns on the family iPad" (Mem. at 18). For each Plaintiff, Defendants did know the answer as it was only them.

As in this case, the *Yershov* plaintiff alleged that Adobe compiles information about subscribers into individual profiles specifically intended to identify those individuals for marketing purposes. *Compare* FAC ¶¶ 48-68, with *Yershov,* 820 F.3d at 484–485. The First Circuit held that because Yershov alleged that Adobe had the ability to link the disclosed identifiers to an individual person, the complaint adequately alleged that the disclosed information was "reasonably and foreseeably likely to reveal" which videos were obtained by the plaintiff in violation of the VPPA. *Id.* at 486.

While the Second Circuit has not expressly ruled on this issue, several courts in this District have found that the transmission of "information which itself identifies a particular person as having accessed specific video materials" violates the VPPA. *See Robinson,* 152 F. Supp. 3d at 182 (S.D.N.Y. 2015);[5] *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022), *motion to certify appeal denied,* No. 22 Civ. 6348 (AKH), 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022). Judge Hellerstein's analysis in *Czarnionka* is instructive. In that case, the court found that plaintiffs adequately alleged disclosure of personally identifying information under the VPPA where an online newspaper disclosed video viewing information along with a Facebook ID ("FID")[6] to Facebook. The court explained,

---

[5] Defendants rely on *Wilson v. Triller, Inc.,* 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022), in support of their argument that this court should require information disclosed to be identifiable by a "ordinary person" before it is actionable. *Wilson*, respectfully, reached this conclusion by incorrectly concluding that *Robinson* adopted that requirement. *See id.* at 91. However, the *Robinson* decision does not quote this language or apply it, instead reaching the broader conclusions reflected in the language quoted above. There are also several other reasons why the "ordinary person" standards is wrong, and in any event does not fit here, addressed in Section III(A)(1).

[6] The Adobe ID at issue in this case is nearly identical to a FID, which has been the subject of numerous VPPA decisions: they are both third party identifiers created by the third party to whom they are disclosed for purposes of identifying an individual. Both an Adobe ID and a FID represent the third party's "code name" for the individual. FIDs have been routinely held to be personally identifying information for purposes of the VPPA, including by courts in this circuit. These IDs, even if composed of a string of numbers and letters, represent *individuals*. *See In re Hulu Priv. Litig.*, No. C 11-03764-LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user. That it is a string of numbers and letters does not alter the conclusion. Code is a language, and languages contain names, and the string is the Facebook user name."); Other courts have reached the same conclusion. *See Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314–15 (D. Mass. 2022); *Feldman v. Star Trib. Media Co. LLC, 659* F. Supp. 3d 1006, 1021-22 (D. Minn. 2023).

"Facebook need not link the disclosed FID to personal information obtained elsewhere. The FID itself represents a particular individual." *Id.* at *3; *see also Collins v. Pearson Educ., Inc.*, No. 23 Civ. 2219 (PAE), 2024 WL 895316, at *8 (S.D.N.Y. Mar. 1, 2024) (holding that a FID constitutes personally identifying information under the VPPA). Similarly, in sustaining a VPPA claim involving the transmission of Facebook cookies to Facebook from a website, Judge Swain recently explained that "[c]ourts across the country—including in this district—have indicated that providing a third party with PII that is legible *to that specific third party* is sufficient to state a claim under the VPPA." *Aldana v. GameStop, Inc.,* No. 22-cv-7063-LTS, 2024 WL 708589, at *8 (S.D.N.Y. Feb. 21, 2024) (emphasis added).

As in *Czarnionka*, *Collins*, and *Aldana*, Plaintiffs here meet the "identifiability" requirement by alleging the Defendants transmitted their video viewing history to third parties— namely Adobe and mParticle—with identifiers that specifically identified them to those third parties. *See* Section III(A)(1).  If anything, the allegations here are even stronger because Plaintiffs have specifically alleged that the video viewing history Defendants transmitted was specifically intended to be associated with them, through user profiles that Adobe and mParticle developed specifically to target them with ads based on their individual viewing history. FAC ¶¶ 5-11; 43-79.

Defendants ignore the directly applicable decisions of courts in this District and the First Circuit and instead rely on distinguishable out of circuit decisions. Mem. at 12-15 (citing *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 985 (9th Cir. 2017); *In re Nickelodeon Consumer Priv. Litig.,* 827 F.3d 262, 284 (3d Cir. 2016)). Those cases involved substantially different types of information—that were far less identifiable and cannot be linked to an individual person—and are, therefore, not comparable to the unique identifiers in this case that are proven to be used to

uniquely target consumers. These cases concerned *device identifiers* and IP addresses—information that could not be linked to individuals. In *Eichenberger,* plaintiffs based their VPPA claims on the disclosure of a Roku device serial number. A Roku device is an internet connected device that connects to a TV to access internet streaming content and apps. *Eichenberger*, 876 F.3d at 981. The Ninth Circuit held that the disclosure of a device serial number could not sustain a VPPA violation because it would not "permit an ordinary person" to identify a specific individual. *Id.* at 985. Similarly, *In re Nickelodeon Consumer Privacy Litigation*, concerned the alleged disclosure of a computer IP address (not an individual identifier). Like with the Roku device serial number in *Eichenberger*, multiple individuals can have the same IP address because computers are often shared devices. Thus, the Third Circuit dismissed the claim based on a finding that an IP address did not reveal an individuals' identity as contemplated by the statute. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 289. The same is not true here, where Plaintiffs allege disclosure of identifiers that immediately reveal a user's identity to a third party, such as the Adobe ID.  Here, the disclosure of PII to third parties is plainly associated with an individual's identity and even stronger than the information held to constitute PII in *Yershov* (GPS coordinates and Android ID). The disclosure of the Adobe ID by each of the NBC Apps to Adobe, alone, *easily* satisfies the First Circuit's test, as well as the standard adopted by the courts in this District in *Robinson* and *Czarnionka.*

Despite the fact that *Eichenberger* and *Nickelodeon* fail to address individual identifiers, Defendants argue this Court should rely on them to adopt an "ordinary person standard," i.e., where information is not considered identifiable unless a human, with no assistance, can identify a specific person simply by looking at the data. This argument, however, defies both the plain language and intent of the VPPA, which on its face is not limited to *natural* persons, but intended

to protect against the unauthorized disclosure of identifiable video viewing history to *any person* (corporations included). Limiting the statute in this way would create absurd results and render if effectively meaningless. *See Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 58 (2d Cir. 2021) (courts must interpret statutes in a way that "comports with the statute's primary purpose and does not lead to anomalous or unreasonable results.") (citation omitted). For example, under Defendants' preferred construction, the video store that leaked Judge Bork's video viewing history to the *Washington City Paper* could have done so legally so long as it encoded that information with the most basic shared cipher, allowing the paper to identify Judge Bork but preventing an "ordinary person" who found the data from doing so.[7] Even more absurd, it would be legal, in Defendants' version of the law, for the video store to share the list of Judge Bork's titles (which wouldn't identify him on their face) and then call the newspaper to announce "I just sent you Judge Bork's video viewing history." That cannot be the law.

The Court should reject this artificial construction and find that Defendants' disclosure of video viewing history with identifiers that (as intended) identified Plaintiffs to third parties, including Adobe and mParticle, violates the VPPA and the VCPA.

## 2.    Defendants Knew the Information Transmitted From the NBC Apps Could be Used by Third Parties to Identify Plaintiffs

The VPPA and VCPA prohibit "knowing" disclosures of PII. 18 U.S.C. § 2710(b)(1); N.Y. Gen. Bus. Law § 673(1). This is satisfied where a plaintiff alleges "the consumer's identity; the video material's identity; and the connection between them." *Aldana*, 2024 WL 708589, at *9 (citing *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (internal quotations

---

[7] Both *Robinson*, 152 F. Supp. 3d at 183 and *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *11 explained in *dicta* that a party could not evade VPPA liability in this manner. *Robinson*, 152 F. Supp. 3d at 182, (*quoting In re Hulu Priv. Litig.*, 2014 WL 1724344, at *11) ("although 'a unique anonymized ID alone is not PII ... context could render it not anonymous and the equivalent of the identification of a specific person'; '[o]ne could not skirt liability under the VPPA ... by disclosing a unique identifier and a correlated lookup table.'").

omitted)). This does not require the plaintiff to allege that the person to whom information was disclosed to would "actually connect" the disclosed information to the subscriber, so long as plaintiffs plausibly allege "the conscious disclosure of personally identifiable information." *Feldman*, 659 F. Supp. 3d at 1021–22.

Plaintiffs easily meet this standard by alleging that NBC (the entity in control of the NBC Apps, affirmatively installed third-party SDKs from Adobe, mParticle, and others, to automatically collect and transmit information regarding NBC App users video viewing history and PII to those third parties (FAC ¶¶ 3-6, 8, 46, 130, 130), so that those individuals could be specifically identified and targeted with ads. *See Aldana*, 2024 WL 708589, at *7 ("Plaintiffs' allegation that GameStop 'integrated or installed the Facebook Tracking Pixel into its website' … is sufficient to allege that [it] acted knowingly under the VPPA because GameStop knew that the Pixel would automatically transmit users' information to Facebook.").

Defendants do not dispute the legal standard (Mem. at 10), but instead raise a fact-based argument that they had no way of knowing that third party SDKs from Adobe and mParticle would transmit Plaintiffs' PII. Mem. at 17-18. This counterfactual narrative not only strains credulity (Defendants designed the apps, after all) but must be rejected as it contradicts the FAC's well-pleaded allegations. *See Belozerov*, 646 F. Supp. 3d at 314–15 (refusing dismissal based on defendant's counterfactual arguments in VPPA case on motion to dismiss).

Defendants' related arguments are equally unavailing. Contrary to Defendants' contention (Mem. at 17-18), Plaintiffs do not need to allege that Defendants knew what third parties might *do* with the information they received through the SDKs. *Czarnionka*, 2022 WL 17069810, at *4 (explaining, "[k]nowledge of what Facebook might do with the disclosed information to yield PII is [] unnecessary to state a claim under the VPPA"). Nor do Plaintiffs need to allege that

Defendants know "*who* is using a specific device at the time a transmission is made" (Mem. at 18). *See Golden*, 2023 WL 5434378, at *8 (rejecting NBC's argument that plaintiffs must allege "on a visitor-to-visitor basis, Today.com knew or had a way to know what information was saved in a given user's browser, or whether the identified user's computer had been operated by another person") (cleaned up). Rather, Plaintiffs' allegations about NBC's intent and knowledge regarding its own use of the SDKs is sufficient.[8] Indeed, NBCU was recently held to have acted "knowingly" under the VPPA when it installed and transmitted data through the Facebook pixel on its website, an analogous technology to Adobe and mParticle SDKs at issue here. *Id.* at *8. The Court should reach the same conclusion here.

### 3. Plaintiffs are "subscribers" of the NBC Apps under the VPPA and VCPA

The VPPA and VCPA apply to "consumers" or "any renter, purchaser, or **subscriber** of goods or services[.]"18 U.S.C. § 2710(a)(1); GBL § 672(1) (emphasis added). To qualify as a "subscriber" a person need only provide some "consideration." *Yershov*, 820 F.3d at 489 (individual was subscriber under VPPA where he provided his Android ID and device GPS location). Consistent with these requirements, several courts have found a subscriber relationship where "some or most of the following factors [are met]: payment, registration, commitment, delivery, expressed association, and/or access to restricted content." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255–58 (11th Cir. 2015) (cleaned up); *see also Harris v. Pub. Broad. Serv.*, 662

---

[8] *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1099, cited by Defendants (Mem. at 17-18), is distinguishable. There, the Northern District of California held that plaintiffs' VPPA claim could not survive summary judgment where defendant Hulu offered "affirmative proof" that it did not know what Facebook would do with the information it received. *Id.* While proof of third-party knowledge is not required, Plaintiffs here plausibly allege that Defendants did know that the information disclosed could be used to identify Plaintiffs. *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342–43 (N.D. Ga. 2022) (finding VPPA's knowing requirement satisfied, distinguishing *Hulu* and explaining the "[c]ourt is not faced with evaluating evidence that WebMD knew Facebook would combine the video viewing and identity information of its consumers; rather, the question is whether the allegations of the First Amended Complaint plausibly state a claim under the VPPA"). Thus, even if the court were to follow *Hulu* (and it should not) Plaintiffs prevail.

F. Supp. 3d 1327, 1331 (N.D. Ga. 2023) (applying *Ellis*, finding a subscriber relationship where plaintiff registered for an account, providing "personal information, including her name, address, email, IP address and cookies"); *but see Golden*, 2023 WL 5434378, at *10 (applying *Ellis*, finding no subscriber relationship where plaintiff did not create an account, provide personal information though the app, make payments, register, or sign up for periodic services).

Defendants concede that Plaintiffs are subscribers who meet the statutory definition of "consumer" for the Peacock App and CNBC News App. Mem. at 18-19. Indeed, Plaintiffs *paid* for subscriptions to the Peacock App and/or CNBC News App, registered for accounts with these apps by providing their names and email addresses, and received or accessed streaming content that is inaccessible without an account. FAC ¶¶ 13, 14, 18.

Defendants argue that Plaintiffs cannot assert claims on behalf of class members who used the NBC News App or NBC Sports App.[9] Mem. at 19. This is a premature class standing argument that cannot be resolved at the motion to dismiss stage. *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 439 (S.D.N.Y. 2020) (refusing to dismiss claims based on class standing on motion to dismiss due to the "limited record before" the court."); *accord Moses v. Apple Hosp. REIT Inc.*, No. 14-cv-3131-DLI-SMG, 2016 WL 8711089, at *4 (E.D.N.Y. Sept. 30, 2016); *Hart v. BHH, LLC*, No. 15-cv-4804, 2016 WL 2642228, at *3 (S.D.N.Y. May 5, 2016).

Even if it were appropriate to address this argument at the motion to dismiss stage, Defendants are wrong.  Defendants incorrectly rely on *DiMuro v. Clinique Lab'ys, LLC*, 572 F.

---

[9] Even absent class members who did not pay for a subscription to the NBC Apps are subscribers under the statute, as courts routinely hold that consideration need not be financial. See *Yershov*, 820 F.3d at 489 (finding subscriber relationship where consideration was provided in the form of information provided and user's installation of an app on phone); *Saunders v. Hearst Television, Inc*., No. 23-cv-10998-RGS, 2024 WL 126186, at *3 (D. Mass. Jan. 11, 2024) (finding subscriber relationship where plaintiffs provided email addresses and geolocation information); *Jackson v. Fandom, Inc*., No. 22-cv-04423-JST, 2023 WL 4670285, at *3–4 (N.D. Cal. July 20, 2023) (similar); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *7-8 (N.D. Cal. Aug. 10, 2012) (finding subscriber relationship in free account because plaintiffs registered for accounts).

App'x 27, 29 (2d Cir. 2014) to argue that Plaintiffs, even if subscribers of the Peacock TV App and CNBC News App, cannot represent individuals who used other NBC Apps. *See* Mem. at 2, 11. *DiMuro*, however, involved false advertising claims asserted for seven cosmetics products with disparate ingredients and advertising. *Id.* at 29. There, the court found that plaintiffs, who purchased three of the seven products at issue, could not represent consumers of the other products because each product would require a distinct analysis of whether "35-some" advertising statements were false with respect to each of the seven products. *Id.*

Here, in contrast, Plaintiffs' claims are based on the automated disclosure of information PII and video viewing history to third parties through SDKs that operate in a common manner, as described herein. Defendants commonly failed to obtain consent to transmit such information for all apps that incorporated this technology. FAC ¶¶ 80-85. Accordingly, Plaintiffs may assert claims on behalf of users of all NBC Apps who suffered this common harm though the same misconduct. *See Rivera v. S.C. Johnson & Son, Inc*., No. 20-cv-3588 (RA), 2021 WL 4392300, at *9 (S.D.N.Y. Sept. 24, 2021) (holding that following *DiMuro*, a plaintiff has standing to assert claims on behalf of similar products when the products are substantially similar and the alleged misrepresentation is the same). Courts in this District have routinely allowed plaintiffs to bring claims on behalf of users of similar products following *DiMuro. See e.g., Ham v. Lenovo (United States) Inc.*, 664 F. Supp. 3d 562, 578 (S.D.N.Y. 2023); *Buonasera v. Honest Co.*, *Inc*., 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016); *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 335 (S.D.N.Y. 2021); *Kandel v. Dr. Dennis Gross Skincare, LLC*, No. 23-cv-01967 (ER), 2024 WL 965621, at *11–12 (S.D.N.Y. Mar. 5, 2024).

**4.     The NBCU Privacy Policy Does Not Satisfy VPPA or VCPA Disclosure Requirements**

Under the VCPA, a "video tape service provider may disclose personally identifiable information concerning any consumer: (a) to the consumer; (b) to any person with the ***informed, written consent*** of the consumer."[10] GBL § 672(6) (emphasis added). The statute sets forth specific requirements for "informed, written consent" including that the consent must be (1) "in writing in at least ten point bold face type, affixed to any membership, subscriber or rental agreement between the consumer and the video tape service provider, and shall be posted on a sign in full and clear view of the consumer at the point of rental transaction;" and (2) be drafted to include the language provided by GBL § 672(6).

Likewise, the VPPA requires Defendants to obtain informed, written consent from subscribers before disclosing their video viewing history and PII with third parties. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;" and (2) "at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner." The NBC Apps do not provide any separate written consent form at the time of sign up,[11] or otherwise in a form that meets these requirements.

Defendants argue that their Terms of Service and Privacy Policy meet these statutory requirements. Mem. at 8-9.  They do not come close. There is no mention that "content you view"

---

[10] Defendants cannot argue that their misconduct falls within the statute's "ordinary course of business exception" because Defendants did not disclose Plaintiffs' PII and video viewing history in furtherance of "only debt collection activities, order fulfillment, request processing, and the transfer of ownership." GBL § 672(2).

[11] The NBC Sports App currently does contain a disclosure concerning sharing of video viewing history. Upon information and belief, this disclosure was not present during the entirety of the Class Period, and regardless it does not comply with the disclosure requirements of the VCPA. FAC ¶ 82 n. 36.

will be sent to third parties with PII, such that the individuals user's identity is revealed. *See* Privacy Policy, ECF No. 32-3 at 3-4, 7, 8. And what the Privacy Policy does say about information sharing is wrong, claiming that "video viewing behavior" is *only* shared with third parties "with your appropriate consent when required, and consistent with applicable law" (*id.* at 8)—a claim that cannot be true given Defendants' failure to meet the statutory consent requirements. Thus, Defendants' Terms of Service and Privacy Policy are wholly insufficient and do not absolve Defendants of liability.

> **5.    Defendants are "video tape service providers" and are subject to the VCPA**

The VPPA and VCPA define video tape service providers as "any person engaged in the business of rental of prerecorded video cassette tapes or *similar audio visual materials* […]." GBL § 672(4) (emphasis added). As Defendants concede, the VCPA is modeled after the VPPA. *See* Mem. at 20. Indeed, the VPPA's definition of a video service provider is nearly identical. 18 U.S.C.A. § 2710 ("video tape service provider" means any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials"). Courts have found the VPPA's definition of a "video tape service provider" is "unambiguous" and "looks to a *video's format*, rather than its subject matter or the provider's identity." *Golden*, 2023 WL 5434378, at *4 (emphasis added).

Defendants are unquestionably video tape service providers. Courts have consistently held that streamed videos—like those at issue here—are "similar audio visual materials" and streaming services—including specifically Defendant NBCU—are "video tape service providers." *Id.* at *4-5 (holding NBCU is subject to the VPPA); *see also Jackson*, 2023 WL 4670285, at *3 ("Courts have generally construed similar audio visual materials broadly, finding that streaming video delivered electronically falls within that definition.") (cleaned up); *In re Hulu Priv. Litig.*, 2014

WL 1724344, at \*5; *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019). The NBC Apps Defendants developed here are no different and meet these requirements for the same reason.

Defendants do not cite any contrary authority (because they cannot) (*i.e.*, holding that the VCPA excludes video streaming services). Instead, Defendants cite *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 98 (S.D.N.Y. 2023), an inapposite decision that does not involve the VCPA at all, let alone any discussion of what content qualifies as audio visual materials. *See* Mem. at 20. Indeed, Defendants' reliance on *Carter* to argue that because the VCPA does not include the term "delivery" and, thus, must not apply to subscriptions (*id.*) is demonstrably incorrect. The portion of *Carter* Defendants cite interprets the meaning of "subscriber" under the VPPA—not the delivery of material. *Carter*, 670 F. Supp. 3d at 98. Defendants' strained application of *Carter* also ignores the specific language of the VCPA, which defines "consumer" includes "any renter, purchaser, or *subscriber* of goods or services from a video tape service provider or video tape seller." GBL § 672(1) (emphasis added). This is dispositive: if the VCPA did not apply to subscriptions (as Defendants' claim), the term subscriber in the VCPA's definition of consumer would be superfluous, in violation of established statutory construction rules. *Carter*, 670 F. Supp. 3d at 98 ("In interpreting a statute . . . courts are not to construe each phrase literally or in isolation.") (quotations omitted). The Court should reject Defendants' invalid interpretation of this statute.

**B.    Plaintiffs State a Claim Under GBL § 349**

To state a claim under GBL § 349, a plaintiff must plead: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or

practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 213 (S.D.N.Y. 2019) (quotations omitted). GBL § 349 prohibits both affirmative misrepresentations and material omissions. *Krobath v. S. Nassau Communities Hosp.*, 178 A.D. 3d 807, 809 (2d Dep't 2019). To state an omission claim under GBL § 349, plaintiff must allege that defendant alone possessed material information and failed to disclose that information. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D.N.Y. 2019). Whether a particular act or practice is deceptive is usually a factual question. *Kane v. Univ. of Rochester*, No. 23-cv-6027-FPG, 2024 WL 1178340, at *16 (W.D.N.Y. Mar. 19, 2024) (internal citation omitted).

### 1.    Plaintiffs Adequately Plead NBC's Deceptive Conduct

Plaintiffs, like millions of consumers, access pre-recorded video content through the NBC Apps. FAC ¶¶ 28, 32, 33, 36, 37, 40, 41. Defendants omitted material information about use of the NBC Apps. *First,* Defendants failed to disclose their practice of sharing PII and video viewing history with third parties such that third parties could identify an individual's video viewing history. *Id.* ¶¶ 43, 48, 49, 69, 70. *Second*, Defendants failed to obtain consent for their disclosure of PII and video viewing history as required by the VPPA and VCPA. *Id.* ¶¶ 80, 83, 85. Plaintiffs had no way of knowing that this information "secretly disclosed Plaintiffs' and class members' video viewing histories in such a way that the video viewing history could be associated with their individual identity." *Id.* ¶¶ 48-79, 154. In fact, Defendants intentionally incorporated the SDKs responsible for the data transmission to receive analytical insights allowing Defendants to improve their services. *See id.* ¶¶ 43-47. Had Plaintiffs known of this conduct, they would have made different choices: Plaintiffs would have either not purchased Defendants' services or paid

significantly less for Defendants' services had they known. *Id.* ¶¶ 86, 94-97, 154. These allegations are sufficient to sustain a GBL § 349 claim.

Defendants argue that Plaintiffs cannot state a GBL § 349 claim because the NBCU Privacy Policy,[12] which was incorporated in Peacock and NBCU's Terms of Service, discloses their practice of sharing video viewing history and PII, such that this information was not solely within the control of Defendants as required for an GBL claim based on an omission. Mem. at 22-24. This argument fails for the same reason stated above. *See* Section III(A)(4). As already explained, neither the NBCU Privacy Policy, nor Defendants' Terms of Service, precisely disclose NBCU's conduct such that there is *no possibility* that a reasonable consumer would be misled, as is required for a disclaimer to defeat a GBL § 349 claim. *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 180 (2021) ("A disclaimer may not bar a [GBL § 349] claim at the pleading stage unless it utterly refutes plaintiff's allegations [by addressing] the alleged deceptive conduct precisely, so as to eliminate any possibility that a reasonable consumer would be misled.").

Not only do Defendants fail to point to specific language in the Privacy Policy that would clearly and unambiguously inform a reasonable consumer of this practice, they also fail to acknowledge that the Privacy Policy incorrectly states that "video viewing behavior" is only shared with third parties "with hashed or masked identifiers" "with your appropriate consent when required, and consistent with applicable law." *See* Privacy Policy, ECF No. 32-3 at 8.[13] This is

---

[12] Notably, Plaintiff Afriyie began using the Peacock TV App and CNBC News App in 2021, before the effective date of the purported disclosures provided by Defendants. *See* FAC ¶¶ 13, 14.

[13] Defendant's argument that a violation of VPPA and VCPA cannot be a basis for Plaintiffs' GBL § 349 claim (Mem. at 24) finds no support in the law. The failure to obtain consent as required by those statutes is inherently deceptive, especially where, as here, the privacy policy falsely states that this information would not be share absent required authorization by law. *See Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 543 (E.D.N.Y. 2006) (finding that where defendant failed to comply with federal law, a reasonable jury could find that the defendant engaged in a materially misleading act). This independently deceptive conduct can support a GBL claim.

inaccurate, as the required disclosures under the VPPA and the VCPA were not obtained in *violation* of the applicable law. Further, neither the Terms of Service, nor the Privacy Policy disclose that video viewing history, or "content you view" is sent to third parties with PII such that a user's identify is revealed. *See* Privacy Policy, ECF No. 32-3 at 3-4, 7, 8.  Thus, Defendants' transmissions of Plaintiffs' video viewing history and PII to third parties was hidden from Plaintiffs.

### 2.      Plaintiffs Adequately Plead Materiality and Injury

To determine whether a defendant's conduct is "materially misleading," New York has adopted an objective test that considers "whether representations or omissions [are] likely to mislead a reasonable consumer acting reasonably under the circumstances." *Warner v. StarKist Co.*, No. 18-cv-406-GLS-ATB, 2019 WL 1332573, at *1 (N.D.N.Y. Mar. 25, 2019) (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).

The FAC's allegations satisfy the objective test. Courts have explained that a "material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Tomassini v. FCA US LLC*, No. 3:14-cv-1226-MAD-DEP, 2016 WL 11707888, at *7 (N.D.N.Y. Nov. 23, 2016) (cleaned up). Here, Plaintiffs have pled that had they known that NBC would disclose their video viewing history and PII without their consent, such that they could be individually identified, they would not have purchased, or would have paid less for, their subscriptions to the NBC Apps. FAC ¶¶ 152, 155. This adequately alleges materiality, as it would have influenced their purchase decisions. *See Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 104–06 (S.D.N.Y. 2022) (sustaining an omission claim under GBL § 349 and holding that "where a defendant fails to supply a consumer

information that it alone possesses, and where that information would be material or important to a reasonable consumer and where the consumer could not have reasonably obtained the information other than through the defendant, [GBL §§ 349 and 350] provide a basis for relief.") (cleaned up).

The same allegations, that Plaintiffs would not have purchased their subscriptions or would have paid less significantly less had they known the truth, also sufficiently allege Plaintiffs' injury under GBL § 349. To plead injury, a "plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.,* 802 F.3d 289, 302 (2d Cir. 2015); *see Rodriguez v. Hanesbrands Inc.*, No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1686105, at *5 (E.D.N.Y. Mar. 30, 2018) (explaining that "many courts have found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations."); *see also Carovillano v. Sirius XM Radio Inc.*, No. 23 Civ. 4723 (PAE), 2024 WL 450040, at *10-11 (S.D.N.Y. Feb. 6, 2024) (denying motion to dismiss where ongoing subscriber's price premium theory adequately alleged damages).

Defendants' argument that Plaintiffs' claims are barred under the voluntary payment doctrine is unavailing. Mem. at 21. "The voluntary payment doctrine is a common-law doctrine bar[ring] recovery of payments voluntarily made with ***full knowledge of the facts***, and in the absence of fraud or mistake of material fact or law"—knowledge Plaintiffs did not (and could not) have due to Defendants' omissions and inaccurate disclosures. *Fishon,* 620 F. Supp. 3d at 104–06 (emphasis added)*. Vaccariello v. XM Satellite Radio, Inc*., 295 F.R.D. 62 (S.D.N.Y. 2013) (Mem. at 21) does not compel a different result. There, the court held at the class certification stage that determining whether class members knew of an automatic renewal policy, which some class

23

members *wanted* to sign up for, would require individual inquiries to determine whether their claims were barred under the voluntary payment doctrine. Not only is there no analogous scenario alleged here, but the merits of the voluntary payment affirmative defense requires a fact intensive inquiry that cannot be done at the motion to dismiss stage.[14] *See Fishon*, 620 F. Supp. 3d at 104–06 ("Whether the [voluntary payment] doctrine will limit the recovery of Plaintiffs for payments made during certain time periods is a question not fit for resolution at [the motion to dismiss] stage of the proceeding.").

For these reasons, Plaintiffs' claims are not barred by the voluntary payment doctrine and Plaintiffs have adequately pled materiality and damages under GBL § 349.

### C.    Plaintiffs Adequately Allege Unjust Enrichment

To plead unjust enrichment under New York law, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Reider*, 19 N.Y.3d 511, 516 (2012) (quotations omitted). Under New York law, the elements of an unjust enrichment claim are distinct from the elements of Plaintiffs' claims under GBL § 349. *Warner*, 2019 WL 1332573, at *2. Defendants argue that Plaintiffs' unjust enrichment claim is duplicative. This argument fails. The Second Circuit has held that "two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quotations omitted).

---

[14] Even if this question were suitable for resolution at this stage, Defendants' argument must be rejected because Plaintiffs had no knowledge of Defendants' surreptitious transmission of their PII and video viewing history, and did not have "full knowledge of the facts," when they subscribed to the NBC Apps, as required for the voluntary payment doctrine to bar their claims. *See* FAC ¶ 110 ("The earliest Plaintiffs and Class members could have known about Defendants' conduct was shortly before the filing of this Complaint.").

Here, Plaintiffs allege that Defendants collected highly valuable data, including PII and video viewing history sufficient to identify the individual user, then wrongfully and surreptitiously disclosed this data to third parties without users' authorization or compensation thereto, for their own benefit, including to obtain profits from data analytics, advertising benefits, and improvement of their platforms, algorithms, and advertising services. FAC ¶¶ 43-80, 75-79, 85, 94-97, 159-164. Plaintiffs allege that Defendants were enriched by the data they collected and shared with third parties and at Plaintiffs' and class members' expense. *Id.* ¶¶ 159-160. The damages alleged are distinct from Plaintiffs' other claims in that they seek to recover the profits and financial benefit retained from the use of that data, which cannot be recovered through other means. *See Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-cv-9687 (VEC), 2016 WL 4916969, at *8 (S.D.N.Y. Feb. 11, 2016) (unjust enrichment claim sustained where defendant had access to plaintiffs' confidential information, but subsequently used the information for its own use).

Moreover, Fed. R. Civ. P. 8(d)(2) and 8(d)(3) explicitly permit Plaintiffs to assert claims in the alternative. *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183–84 (E.D.N.Y. 2010) (denying motion to dismiss as to alternatively pled unjust enrichment claim); *see also Schneider v. Colgate-Palmolive Co.*, No. 5:22-cv-1294, 2023 WL 4009099, at *105 (N.D.N.Y. June 15, 2023).

Plaintiffs' unjust enrichment claim is properly pled.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Dated:  April 12, 2024

/s/ *Christian Levis*
Christian Levis
Nicole A. Veno
Amanda Fiorilla
Claire Noelle Forde
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
nveno@lowey.com
afiorilla@lowey.com
nforde@lowey.com

Michael P. Canty
Carol C. Villegas
Danielle Izzo
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
dizzo@labaton.com

*Counsel for Plaintiffs*