UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMMA AFRIYIE and ROY CAMPBELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NBCUNIVERSAL MEDIA, LLC and PEACOCK TV, LLC,<br><br>Defendants. | Case No. 1:23-cv-09433-VSB<br><br>Hon. Vernon S. Broderick |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Plaintiffs' VPPA and VCPA Claims Fail for Multiple Reasons ..............................2

        1. The disclosures alleged by the FAC do not personally identify NBCU App users under the "ordinary person" test. ....................................2

        2. Defendants' alleged disclosure of *unique* data (like Adobe IDs) is not personally identifying even under the recipient-dependent PII test. .......................................................................................................5

        3. Defendants could not have known that Plaintiffs were the only users of their devices. ..................................................................................6

        4. Plaintiffs lack class standing to represent all but iOS users of the Peacock and CNBC Apps. ............................................................................6

        5. Plaintiffs do not engage with Defendants' VCPA-specific arguments. ......................................................................................................8

    B. Plaintiffs' GBL § 349 Claims Are Subject To Dismissal ........................................8

        1. Plaintiffs' GBL § 349 theory of deception is dependent on their VPPA / VCPA theory and fails along with it. ...........................................8

        2. Plaintiffs fail to answer Defendants' arguments about materiality and the lack of any connection to New York State....................................9

    C. The Unjust Enrichment Claim Is Duplicative........................................................10

III. CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

Cases

*Aldana v. GameStop, Inc.*,
  No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ........................................4

*Collins v. Person Education, Inc.*,
  No. 23 CIV. 2219 (PAE), 2024 WL 895316 (S.D.N.Y. Mar. 1, 2024) ....................................3

*Corsello v. Verizon N.Y., Inc.*,
  967 N.E.2d 1177 (N.Y. 2012)................................................................................................10

*Curtis v. Aetna Life Ins. Co.*,
  648 F. Supp. 3d 358 (D. Conn. 2023).......................................................................................7

*Czarnionka v. Epoch Times Association, Inc.*,
  No. 22 Civ. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022).........................3, 4

*Czarnionka v. Epoch Times Association, Inc.*,
  No. 22 Civ. 6348 (AKH), 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) ...............................3

*Diaz v. Paragon Motors of Woodside, Inc.*,
  424 F. Supp. 2d 519 (E.D.N.Y. 2006) ......................................................................................9

*Golden v. NBCUniversal Media, LLC*,
  No. 22 Civ. 9858 (PAE), 2023 WL 5434378 (S.D.N.Y. Aug. 23, 2023)..................................6

*Hernandez v. United States*,
  939 F.3d 191 (2d Cir. 2019)...................................................................................................10

*Holve v. McCormick & Co., Inc.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018).....................................................................................7

*In re Hulu Priv. Litig.*,
  No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........................................4

*Kandel v. Dr. Dennis Gross Skincare, LLC*,
  No. 23-cv-01967 (ER), 2024 WL 965621 (S.D.N.Y. Mar. 5, 2024) ........................................8

*Larsen v. Berlin Bd. of Educ.*,
  588 F. Supp. 3d 247 (D. Conn. 2022).....................................................................................10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012).....................................................................................................8

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016).....................................................................................................4

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014) ................................................................................................ 7-8

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) ................................................................................. 3, 4

*Sarr v. BEF Foods, Inc.*,
    No. 18-CV-6409 (ARR) (RLM), 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ...................... 10

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022) ................................................................................ 1, 2, 3

*Yershov v. Gannett Satellite Information Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) .......................................................................................... 1, 2, 3, 5

**Statutes**

N.Y. Gen. Bus. Law § 349 ............................................................................................... 2, 8, 9, 10

I.      INTRODUCTION

In their Opposition to Defendants' NBCUniversal Medial, LLC and Peacock TV, LLC Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), Plaintiffs Amma Afriyie and Roy Campbell present arguments wholly divorced from the cases they cite. Nowhere is this more evident than with the threshold legal issue presented by this case: whether the information Defendants allegedly disclosed constitutes personally identifying information ("PII") under the VPPA or VCPA. As the Motion explains, Plaintiffs' PII theory—i.e., the "recipient-dependent" theory stemming from *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir. 2016)—has been rejected almost everywhere in favor of the "ordinary person" standard, including by every S.D.N.Y. court to address it. In response, Plaintiffs first claim that Defendants "ignore" the issue (which they do not) and then contend that *no* S.D.N.Y. cases agree with Judge Rakoff's analysis in *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82 (S.D.N.Y. 2022). But *each* of the S.D.N.Y. courts cited by Plaintiffs explicitly *agrees* with *Wilson*'s statutory analysis and recognizes that the majority of courts, including those in this District, do too. The same is true with Plaintiffs' attempts to analogize this case to recent VPPA decisions addressing the "Facebook ID." Those cases explain that disclosure of the Facebook ID is personally identifying *because* it satisfies the "ordinary person" test. Yet Plaintiffs refuse to acknowledge that underlying rationale or why it dooms their theory of VPPA and VCPA liability—i.e., because the identifiers they rely on are meaningless to an "ordinary person." There is eight years of caselaw rejecting Plaintiffs' central legal theory. Plaintiffs identify no reason to turn back the clock.

Plaintiffs' other arguments regarding their VPPA or VCPA claims fare no better. Their discussion about "Adobe IDs" fails to differentiate between data that is ***unique*** (like Adobe IDs) and that which is ***personally identifying*** (like a Facebook ID). The latter might support a VPPA claim; the former cannot. The Opposition also fails to explain why Plaintiffs—who only used

two NBCU Apps and the same type of device—can represent individuals that used other apps and devices, whose claims will turn on unique evidence unrelated to Plaintiffs' claims. Finally, Plaintiffs do not address the unique features of the VCPA identified in the Motion.

Plaintiffs also fail to salvage their GBL § 349 and unjust enrichment claims. To the contrary, the Opposition confirms that each relies on Defendants' alleged VPPA or VCPA liability. Because the video-privacy claims fail, so do the others.

This matter should be promptly dismissed.

**II.     ARGUMENT**

   **A.     Plaintiffs' VPPA and VCPA Claims Fail for Multiple Reasons**

      **1.     The disclosures alleged by the FAC do not personally identify NBCU App users under the "ordinary person" test.**

As discussed in the Motion, the threshold issue here is the one addressed by Judge Rakoff in *Wilson*: whether the VPPA's statutory definition of PII applies only to information that an "ordinary person" could use to personally identify someone, or if the identifying nature of a disclosure "depends on the capabilities of the party or parties to which it is disclosed." 598 F. Supp. 3d at 91. While Judge Rakoff opined that the "ordinary person" approach "is the correct one," *id.*, Plaintiffs contend that "several courts"—including many from this District—align with the recipient-dependent test from *Yershov* and, contrary to *Wilson*'s analysis, only require that "Defendants transmitted their video viewing history to third parties . . . with identifiers that specifically identified them to those third parties," (Opp'n at 10). They then argue that an Adobe ID is a "code name" that identified the Plaintiffs to Adobe in the same way that a Facebook ID identifies a Facebook user to Facebook. Both parts of this are wrong.

While Plaintiffs criticize *Wilson* and claim that Defendants ignore the holdings of "several courts in this District," (*Id.* at 9-10 & n.5), their own cases explicitly *agree* with Judge

2

Rakoff's analysis. In *Collins v. Person Education, Inc.*, Judge Engelmayer discussed the ordinary person and recipient-dependent theories of PII and—as in *Wilson*—recognized that "[c]ourts in this District have followed the narrower approach," which is "keyed to an ordinary person's expectations and understanding." No. 23 CIV. 2219 (PAE), 2024 WL 895316, at *7 (S.D.N.Y. Mar. 1, 2024). Judge Hellerstein reached the same conclusion in *Czarnionka v. Epoch Times Association, Inc.*, recognizing that "a majority of courts" hold that to be personally identifying, a "disclosure *itself*, without any additional information, [must] . . . identify a particular person." No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *2 (S.D.N.Y. Nov. 17, 2022) (emphasis added) (quoting *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 180 (S.D.N.Y. 2015)).

These and other cases explain why Plaintiffs' theory of identification—which relies on the transmission of Adobe IDs and device identifiers—does not state a claim under the VPPA or VCPA, but cases relying on disclosure of Facebook IDs have survived motions to dismiss. As *Czarnionka* explains, anyone can use a Facebook ID to identify a specific Facebook user "by simply typing 'facebook.com/[Facebook ID]' into a web browser." No. 22 Civ. 6348 (AKH), 2022 WL 17718689, at *1 (S.D.N.Y. Dec. 15, 2022). But here, the FAC alleges that the data allegedly transmitted by the NBCU Apps only lets *Adobe* potentially draw a connection between the data and its proprietary "unique customer profiles" stored in the Adobe Experience Cloud Platform. (FAC ¶ 55.) Thus, even accepting that a Facebook ID and an Adobe ID are "code names" assigned by Facebook and Adobe, an ordinary person can associate a Facebook ID with an individual Facebook user (i.e., the data is self-identifying, as *Robinson* explains, 152 F. Supp. 3d at 182), but cannot associate an Adobe ID with anyone. Thus, under *Robinson*, *Collins*, *Czarnionka*, *Wilson*, and the approach used everywhere *except* the First Circuit (where *Yershov* controls), Plaintiffs' VPPA / VCPA theory does not allege a disclosure of PII. The decision in

3

*Aldana*, also cited by Plaintiffs, (Opp'n at 10), is consistent with this approach. There, the parties *did not dispute* that a Facebook ID is identifying. *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *8 (S.D.N.Y. Feb. 21, 2024). Instead, Plaintiffs cite a discussion of whether the *delivery* of that identifier via a third-party cookie impacted the VPPA analysis. *Id.* That is not at issue here.

Along these same lines, Plaintiffs posit hypotheticals and say that the ordinary person test leads to absurdities because businesses could sidestep the VPPA by disclosing a list of video rentals and then separately telling the recipient who the records belonged to. (Opp'n at 12.) But this exact hypothetical was considered and rejected in *Robinson*—a case also alleging that Adobe could match unique identifiers to its propriety customer profiles and thereby personally identify consumers. *Robinson*, 152 F. Supp. 3d at 178. There, the court explained that if a business disclosed obfuscated PII and *the business* also provided the key to decode it, the VPPA would be violated because that combined disclosure would be self-identifying. *Id.*, 152 F. Supp. 3d at 182–83 (citing *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *11 (N.D. Cal. Apr. 28, 2014)) ("Disney could not disclose the information at issue here, along with a code that enabled Adobe to decrypt the hashed serial number and other information necessary to determine the specific device's user, and still evade liability.").[1] But that is different from the allegations both here and in *Robinson*. In each case, the complaint alleged that the defendant disclosed data that does not itself identify the plaintiffs, but alleged that Adobe might be able to associate it with the plaintiff using information it already had. *Robinson* is clear that if *only* the recipient can link disclosed data to an individual (as the FAC alleges, FAC ¶ 52) there is no disclosure of PII.

---

[1] Plaintiffs note that *Robinson* does not quote the term "ordinary person test." (Opp'n at 9 n.5.) Not surprising: the term was coined by the Third Circuit in *In re Nickelodeon Consumer Privacy Litigation*, which post-dates *Robinson*. 827 F.3d 262, 267 (3d Cir. 2016). That said, *Robinson*'s analysis aligns completely with the ordinary person test. *Czarnionka,* 2022 WL 17069810, at *2.

4

### 2. Defendants' alleged disclosure of *unique* data (like Adobe IDs) is not personally identifying even under the recipient-dependent PII test.

Even under the *Yershov* standard Plaintiffs' claims still fail. To support their untenable theory of PII, the Opposition conflates data that is *unique* with data that is *personally identifying*. Defendants argued that even under *Yershov*'s recipient-dependent approach to PII, the FAC does not allege facts supporting that any data disclosed by the Peacock or CNBC Apps *personally* identified Plaintiffs to Adobe. (Mot. at 15-17.) Plaintiffs' lone argument in response is that the identifiers allegedly provided to Adobe (e.g., Adobe IDs or IDFAs) are "unique" and "persistent." (Opp'n at 4-5.) But that is irrelevant. While Adobe IDs are unique, Adobe can only use them to identify people *if* they are linked to a personally identifying "profile[] that Adobe maintains on [an] individual." (*Id.* at 4; FAC ¶¶ 55-58.) To that end, the FAC alleges that for first-time app users, a *new* Adobe ID is assigned. But without an existent "robust customer[] profile" to link that new Adobe ID to, the data while *unique* is not *personally identifying*. (FAC ¶ 54.) Here, Plaintiffs do not allege that Adobe had a personally identifying customer profile about them. Accordingly, they do not plausibly allege any transmitted information *personally* identified them to Adobe.

Plaintiffs also imply that Defendants disclosed other information about them, such as "email addresses or geo-location data," which other laws or regulations address. (Opp'n at 5, 8; *id.* at n.3.) This is sleight of hand. Plaintiffs allegedly provided data like email addresses when registering for the Peacock and CNBC Apps, but *do not allege* that data was transmitted to Adobe in connection with any video viewing information. (*Compare* FAC ¶¶ 29, 33 *with id.* ¶¶ 50, 51; *see also* Opp'n at 6 (identifying data sent by SDKs, which does not include email addresses or geo-location).) Nor do Plaintiffs explain what "New Relic IDs" or "User IDs" are,

including whether they are independently identifying (like Facebook IDs). (*Id.*). Any argument that this data is "identifying" is conclusory and should not be credited.

      **3.**      **Defendants could not have known that Plaintiffs were the only users of their devices.**

To meet the VPPA and VCPA's "knowing" requirement, the Opposition argues that "[b]ecause no one else had access to [Plaintiffs'] devices, any identifiers Defendants transmitted from Plaintiffs' devices were *de facto* personal identifiers." (*Id.* at 8.) That does not show a knowing disclosure. Even if Plaintiffs never let any other person use their iPhone, the FAC does not allege how *Defendants* could have known that. Accordingly, the FAC does not allege that Defendants knowingly did anything other than facilitate transmission of *device-related* data. (Mot. at 18.) The Opposition's reliance on cases like *Golden*—which involve defendants' incorporation of software that caused the transmission of *Facebook IDs*—is inapposite. When addressing motions to dismiss courts have held that Facebook IDs are associated with *a person* by design; as such, the transmission of Facebook IDs can amount to a knowing transmission of *personal* information. *See, e.g.*, *Golden v. NBCUniversal Media, LLC*, No. 22 Civ. 9858 (PAE), 2023 WL 5434378, at *8 (S.D.N.Y. Aug. 23, 2023). But here, whether the transmission of an Adobe ID *personally* identifies anyone to Adobe depends on factors outside of Defendants' knowledge or control—e.g., who is using a tracked device and the content of any Adobe "customer profile" associated with a given Adobe ID. The FAC does not bridge that gap.

      **4.**      **Plaintiffs lack class standing to represent all but iOS users of the Peacock and CNBC Apps.**

Plaintiffs bristle against Defendants' argument that they cannot press claims on behalf of NBCU App users whose claims depend on facts far afield from those affecting their own. (Opp'n at 15-16.) Their arguments are misguided.

6

First, Plaintiffs contend that the Court cannot consider class standing on a motion to dismiss. (*Id.* at 15.) That misstates the law. "[B]ecause class standing and class certification are two distinct inquiries, the Court may properly rule on Plaintiff's class standing at the motion to dismiss stage." *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 550 (W.D.N.Y. 2018) (citing *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).)

Second, Plaintiffs say that they can represent the claims of users of apps and devices that Plaintiffs did not use because their "claims are based on the automated disclosure of information PII and video viewing history to third parties through SDKs that operate in a common manner." (Opp'n at 16.) That is not an honest account of Plaintiffs' claims. Plaintiffs' recipient-dependent theory of VPPA liability depends on facts specific to (i) the NBCU App any individual used, (ii) the operating system of the user's device, (iii) the specific data transmissions allegedly caused by that App, and (iv) the ability of any third-party data recipient to *personally* link data to the user. Thus, while Afriyie's and Campbell's cases will develop and rely on evidence about *Adobe's* ability to personally identify them using information collected about their devices and its own proprietary database, they do not need to develop or rely on how the NBC News or NBC Sports Apps operate, or the ways in which mParticle or other third parties can personally associate Android-generated data with users via its "IDSync" system (if at all).[2] *Curtis v. Aetna Life Ins. Co.*, 648 F. Supp. 3d 358, 373 (D. Conn. 2023) (quoting *Ret. Bd. of the Policemen's Annuity*, 775 F.3d at 161 ("One purpose of the class standing test . . . is to ensure that the named plaintiff has

---

[2] The Opposition suggests that Afriyie's device (an iOS device) transmitted information to mParticle via the CNBC App. (Opp'n at 6.) That contradicts the FAC, which *specifically* alleges that the CNBC App only transmits information to mParticle for Android users. (FAC ¶ 72.) Indeed, the other allegations concerning mParticle disclosures specifically indicate when an iOS-related disclosure is made. (*See*, *e.g.*, *id.* ¶ 70.) Based on the FAC's allegations, there is no reason whatsoever for either Afriyie or Campbell to seek discovery from mParticle.

7

'the right incentives' to develop the 'proof contemplated for all of the claims.'")). Plaintiffs' claims do not "implicate[] the same set of concerns as the conduct alleged to have caused injury to other members of the putative class," and they thus cannot prosecute the claims of these other users. *Ret. Bd. of the Policemen's Annuity*, 775 F.3d at 161 (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)).[3]

### 5. Plaintiffs do not engage with Defendants' VCPA-specific arguments.

Finally, Plaintiffs fail to grapple with Defendants' VCPA-specific arguments. The Motion noted that the VCPA's statutory definition of PII is narrower than the VPPA's, and only implicates the disclosure of information that directly "identifies a person." (Mot. at 12-13.) Plaintiffs do not respond to the argument at all.

Defendants also noted that the VCPA only calls for liability for businesses that "rent" or "sell" video materials, and the FAC does not allege Defendants do either. (*Id.* at 20.) Instead of addressing this textual limitation, Plaintiffs say that the term "subscriber" in the VCPA's definition of "consumer" would be superfluous if entities that only deliver (but do not sell or rent) video materials aren't encompassed. (Opp'n at 19.) Not true. There are many businesses (e.g., Costco or Amazon) that sell membership subscriptions *and* sell or rent goods to their subscribers, including video materials. They might be subject to the VCPA. Defendants are not.

## B. Plaintiffs' GBL § 349 Claims Are Subject To Dismissal

### 1. Plaintiffs' GBL § 349 theory of deception is dependent on their VPPA / VCPA theory and fails along with it.

---

[3] None of the cases the Opposition relies on dictates otherwise. Each involved false advertising claims where the at-issue products involved similar advertising. *See, e.g., Kandel v. Dr. Dennis Gross Skincare, LLC*, No. 23-cv-01967 (ER), 2024 WL 965621, at *10 (S.D.N.Y. Mar. 5, 2024) (noting that purchased and unpurchased products "each contradicted the label by containing several of the same toxic ingredients, they each commanded a price premium based on the misrepresentation, and the misrepresentation was made by the same defendant."). This matter is not a misrepresentation case, and Plaintiffs' claims turn on different information shared with different parties depending upon the app and device used.

The Opposition also does not save Plaintiff's GBL § 349 claim. Plaintiffs concede that their theory of deceptive conduct turns on their theory of VPPA and VPCA liability. Specifically, they incorporate their argument that NBCU's Privacy Policy does not satisfy the VPPA's or VCPA's consent requirements because (i) Defendants do not use the language mandated by the VCPA or the standalone consent requirement required by the VPPA and (ii) the Privacy Policy does not disclose that "'content you view' will be sent to third parties with PII, such that the individual user's identity is revealed." (*Id.* at 17-18; *id.* at 21.) But as Plaintiffs' own cases explain, the GBL § 349 claim fails along with VPPA and VCPA claims. *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 543 (E.D.N.Y. 2006) ("[W]here a [defendant] has not violated the underlying [statutory] claim, [it] has not committed a deceptive sales practice because such practice is not materially misleading."). Because the information allegedly disclosed by the Peacock and CNBC Apps does not implicate the VPPA or VCPA, Defendants were under no statutory obligation to collect VPPA- or VCPA-specific consent. Likewise, Defendants had no reason to disclose anything other than their *actual* data practices. Because the alleged disclosures here do not *personally* identify any user's video viewing decisions, there is nothing "deceptive" about Defendants' conduct or consumer-facing disclosures.

> **2.    Plaintiffs fail to answer Defendants' arguments about materiality and the lack of any connection to New York State.**

Regarding materiality, Plaintiffs fail to appreciate their *own* allegations that they *continue* to pay for their Peacock and CNBC App subscriptions, which nullifies any conclusory allegations that they would not have purchased or would have paid less had they known of Defendants' data practices. Indeed, while the Opposition posits that full knowledge "would have influenced their purchase decisions," (Opp'n at 22), Plaintiffs allege that they continue to use, enjoy, and pay for their Peacock and CNBC App subscriptions despite "know[ing] about

9

Defendants' conduct . . . [since] before the filing of [the original] Complaint," (FAC ¶ 110). This includes Campbell, who continues to pay for his monthly Peacock subscription, including during the months between the filing of the original and amended complaints. (*Id.* ¶ 18.) Plaintiffs' decision to *continue* their subscriptions even after filing their lawsuit renders their materiality allegations contradictory and nullifies allegations of injury. *Larsen v. Berlin Bd. of Educ.*, 588 F. Supp. 3d 247, 256 (D. Conn. 2022) (citing *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) ("[A] court need not credit conclusory or contradictory allegations.").

Additionally, the Motion noted that apart from alleging Defendants' businesses are based in New York, the Plaintiffs' GBL § 349 claim alleged no connection to the state. (Mot. at 21 n.5.) The Opposition does not respond to the argument and, thus, concedes it.

### C.   The Unjust Enrichment Claim Is Duplicative

Plaintiffs also do not contest that the only "unjust" conduct alleged for their unjust enrichment claim is the same conduct underlying their VPPA and VCPA claims. (Opp'n at 25.) Instead, they say that the claim seeks "distinct damages." (*Id.* at 24-25.) But those damages are still based on the *same* conduct and theories underlying Plaintiffs' other claims. Accordingly, if the Court finds that Plaintiffs cannot state a claim under the VPPA or VCPA (as it should), there are no independent allegations entitling Plaintiffs to relief for their unjust enrichment claim. *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409 (ARR) (RLM), 2020 WL 729883, at *10 (E.D.N.Y. Feb. 13, 2020) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) ("I have already determined as a matter of law that BEF did not misrepresent the Mashed Potatoes. Thus, 'an unjust enrichment claim cannot remedy the defects' in the plaintiffs' other claims[.]"). The claim fails as duplicative. *Id.*

### III.   CONCLUSION

For all the reasons discussed here and in the Motion, the FAC should be dismissed.

10

Dated: April 19, 2024	Respectfully submitted,

By: /s/ Jeffrey Landis
Jeffrey Landis
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
Email: jeff@zwillgen.com

Benjamin S. Thomassen*
ZWILLGEN PLLC
One North LaSalle St. Suite 4600
Chicago, IL 60602
Main: (312) 685-2278
Email: ben.thomassen@zwillgen.com

*Pro hac vice application forthcoming*

*Counsel for Defendants
NBCUniversal Media, LLC and Peacock TV LLC*